## KURTZ v. OGDEN CANYON SANITARIUM COMPANY et al. (UTAH & OREGON LUMBER COMPANY, et al., Interveners).

No. 2085.    Decided March 11, 1910.    On Application for Rehearing, April 5, 1910 (108 Pac. 14).

1. PARTIES—CAPACITY TO SUE.    Every natural person of lawful age has legal capacity to sue.    (Page 321.)

2. DESCENT AND DISTRIBUTION—MORTGAGES—FORECLOSURE—PARTIES PLAINTIFF.    An heir and distributee of a decedent's estate who was appointed in the order of distribution as trustee for the other heirs is a proper party plaintiff to sue for the foreclosure of a trust deed held by such decedent's estate, as assignee, for security, such appointment being made at the request of all the heirs interested in the claim secured.    (Page 321.)

3. EXECUTORS AND ADMINISTRATORS—ORDER OF DISTRIBUTION—COLLATERAL ATTACK.    The court having jurisdiction of all the heirs of a decedent's estate and of the subject-matter, an order of distribution is not subject to collateral attack on the ground that the provision therein appointing one of the distributees as trustee for the other heirs for the foreclosure of a mortgage held by the estate, was in excess of the court's power.    (Page 322.)

4. PLEADING—GROUNDS FOR DEMURRER—MISJOINDER OF CAUSES.    The objection to a complaint that several causes of action have been "commingled in one statement as one cause of action" is not a ground for demurrer under Comp. Laws 1907, sec. 2962, as a misjoinder of "several causes of action."    (Page 322.)

5. PLEADING—COMPLAINT—COMMINGLING OF CAUSES.    The remedy for commingling in one statement several causes as one cause of action is a motion to require plaintiff to separately state his cause of action, as required by Comp. Laws 1907, sec. 2961.    (Page 322.)

6. ACTION—JOINDER OF CAUSES—SEPARATE NOTES COLLATERAL TO SAME MORTGAGE.    The causes of action on separate notes secured by the same mortgage may be joined in one action for foreclosure.    (Page 322.)

7. MORTGAGES—FORECLOSURE—ATTORNEY'S FEES—EVIDENCE AS TO AMOUNT.    Under Comp. Laws 1907, sec. 3505, providing that the attorney's fee in foreclosure proceedings shall be fixed by the court, notwithstanding any stipulation in the mortgage to the contrary, the court may hear testimony of attorneys to aid it in fixing a

reasonable fee, though the mortgage provides a definite amount therefor.  (Page 323.)

8. APPEAL AND ERROR—REVIEW—HARMLESS ERROR.  Evidence, even if improperly admitted, which does not change the result is not prejudicial.  (Page 323.)

9. CORPORATIONS—MORTGAGES—DEBTS SECURED.  A resolution of corporate directors authorized the giving of a note to cover two items of indebtedness due to the payee, and the transfer to the payee of a trust deed, or mortgage, to be held as collateral to secure such note.  In the note it was stated that the trust deed was "deposited as collateral security for the payment of this note, and of any and all claims, demands, or other indebtedness due, or not due." Held, that the security of the trust deed did not cover another note, subsequently made by the corporation, to the same payee, but not mentioned in the resolution.  (Page 325.)

10. CORPORATIONS—MORTGAGES—DELIVERY.  A corporation executed a mortgage in form of a trust deed to secure bonds to be issued. The bonds were not negotiated, but the corporation becoming indebted for borrowed money on notes indorsed by one of its directors, and such director having died, and his administrator having paid the indebtedness, and the claim against the corporation having been distributed among the heirs of the deceased director, and one of the distributees appointed to collect the claim against the corporation, a note for the amount was given such distributee by the corporation, and the mortgage was transferred as colateral. Held that, there being no evidence of fraud in thus securing the debt paid by the corporate director, the mortgage lien is valid, the effect being the same as if it had been executed and delivered for the purpose of securing the corporate debt.  (Page 325.)

11. CORPORATIONS—INSOLVENCY—PREFERENCES TO DIRETORS.  Where a corporation received the exclusive benefit of the money borrowed for it on the indorsement of one of its directors, a corporate mortgage given to secure the estate of such director, who paid the debt, is not a giving of an unlawful preference to a corporate director.[1]  (Page 325.)

12. CORORATIONS—INSOLVENCY—EVIDENCE OF INSOLVENCY.  That a corporation is insolvent at the time its mortgage is foreclosed does not show that it was insolvent when the mortgage was given.  (Page 327.)

13. CORPORATIONS—MORTGAGES—FORECLOSURE OF TRUST DEED—PARTIES PLAINTIFF.  Where corporate bonds and deed of trust for security were never actually negotiated, nor delivered for the purpose for which they were executed, but the deed subsequently became

---

[1] Wells v. Scott, 18 Utah, 127, 55 Pac. 81; National Bank v. Scott, 18 Utah, 400, 55 Pac. 374.

operative as security for a corporate debt, with which the trustee had no connection, such trustee is not a proper party plaintiff to sue for the foreclosure of the trust deed.2 · (Page 327.)

### ON APPLICATION FOR REHEARING.

14. CORPORATIONS—MORTGAGES—FORECLOSURE—PARTIES PLAINTIFF. A corporation executed a trust deed to secure bonds to be issued. The bonds were not negotiated, but, the corporation having become indebted for borrowed money, the deed and bonds were, by authority of a corporate resolution, delivered as "security for the payment of said money," as evidenced by the collateral corporate note. *Held,* that on default in the payment of such note, the payee could sue to foreclose the trust deed.    (Page 329.)

Appeal from District Court, Second District; *Hon. J. A. Howell,* Judge.

Action by J. H. Kurtz against the Ogden Canyon Sanitarium Company, and C. D. Clark, defendants, and the Utah & Oregon Lumber Company, J. H. Winslow, Sr., and the Shupe-Williams Candy Company, interveners.

Judgment for plaintiff.   Interveners appeal.

MODIFIED AND AFFIRMED.

*H. H. Henderson,. T. D. Johnson* and *John C. Davis* for appellants.

*Maginnis & Corn* and *A. G. Horn* for respondent.

FRICK, J.

The plaintiff brought this action against the Ogden Canyon Sanitarium Company, hereinafter styled "company," and one C. D. Clark to foreclose a mortgage executed in the form of a trust deed in which said Clark was named trustee. The mortgage was delivered to plaintiff as collateral security, as will more fully appear hereafter.   All of the other defendants intervened in the action as judgment creditors of

---

2 Stevens v. Improvement Co., 20 Utah, 267, 58 Pac. 843.

said company, and claimed that their judgment liens were prior in right to the mortgage lien of plaintiff. The court found in favor of the plaintiff, declared said mortgage to be a prior and paramount lien, entered judgment and decree of foreclosure, and ordered the land described in said mortgage (which was all the land in which said company had any interest) sold, and the proceeds of sale to be applied first on the debt secured by said mortgage, and the balance, if any, on said judgment liens. The defendants and interveners join in the appeal. The findings of fact fairly reflect the pleadings and the evidence. In view of the questions which are raised by the appeal, we deem it best to state at least the substance of the findings.

The court found: That the company aforesaid, in August, 1905, issued and delivered to one C. D. Clark, as trustee, fifty coupon bonds of one thousand dollars each, bearing six per cent interest, and that on said date, in connection with said bonds, and to secure their payment, said company also executed and delivered to said Clark, as trustee, a certain "deed of trust and mortgage" whereby said company conveyed to said trustee certain lands situated in Weber County, Utah; that said trust deed was duly filed for record, and, on October 13, 1905, was duly recorded in the mortgage records of said Weber County; that said company at various times between December, 1905, and December, 1906, had duly executed and delivered to the Pingree National Bank of Ogden, Utah, certain promissory notes as evidences of loans made by said bank to said company, which together with interest, on August 30, 1906, amounted to the sum of $14,921.90; that said notes were given for money actually received from said bank, which money was used by said company in improving its property and to pay its debts; that said notes were also signed by certain individuals as makers who at the time were directors of said company, but no part of the money obtained as aforesaid was used by said individuals who signed the notes as aforesaid, but that said individuals, although apparently makers of said notes, were in fact sureties, and the debt in-

curred by the loans from said bank was the sole debt of said company; that thereafter, on or about the 15th day of October, 1905, to secure the payment of the notes and indebtedness aforesaid, said company directed said trustee to deliver to said bank said bonds and trust deed, and that the same were at said time delivered to said bank to secure the payment of said notes and indebtedness; that one T. J. Kurtz, who was a director of said company, personally signed the notes aforesaid, and that he died on the 18th day of November, 1905, and thereafter, on the 11th day of December, 1905, the plaintiff, J. H. Kurtz, a brother and heir of said T. J. Kurtz, was duly appointed administrator of the estate of said T. J. Kurtz, deceased, and that said J. H. Kurtz duly qualified as such administrator and continued to act as such until said estate was fully administered; that during the month of August, 1906, said bank presented its claim evidenced by said notes against the estate of said T. J. Kurtz, the signer thereof which claim was thereafter duly allowed by said administrator, and said allowance was approved by the district court of Weber County, Utah; that at the time of the death of said T. J. Kurtz said company was also indebted to him for moneys advanced by him to it which with accrued interest amounted to the sum of $1491.54; that on the 30th day of August, 1906, the directors of said company adopted a certain resolution, the substance of which is as follows: That whereas said company was at that time indebted to the Pingree National Bank in the sum of $14,921.90 for money borrowed by said company; and whereas the trust deed and bonds before mentioned had been delivered to said bank as collateral security for said indebtedness, and said bank now holds the same as security for the loans aforesaid; and whereas T. J. Kurtz during his lifetime, signed the notes held by said bank for the money borrowed from it by said company, and while said Kurtz appeared as a maker of said notes, he in truth was but surety for said company; and whereas said T. J. Kurtz has since died and J. H. Kurtz (the plaintiff) has been duly appointed administrator of the estate of said T. J. Kurtz, deceased,

and the claim of said bank has been presented for payment to said administrator and has been allowed by him, which allowance has been approved by the district court of Weber County; and whereas said company at this time is without funds to pay the debt due the said bank, who is pressing the said administrator for payment, therefore it was resolved that if said administrator will pay the debt owing by said company to said bank the president and secretary of said company are instructed to execute and deliver to said J. H. Kurtz, as administrator, the promissory note of said company for the full amount paid by him to said bank, which note shall be payable in six months from this date and bear eight per cent. interest; that the company consents that upon payment of the debt due to said bank by said administrator the mortgage or deed of trust and bonds held by said bank issued by it be transferred to said administrator, and that in case the interest on said note should not be paid when due the whole of said note shall become due, and that said "J. H. Kurtz as administrator as aforesaid shall hold the notes and obligations issued to the said Pingree National Bank, together with the said bonds and deed of trust, as good and valuable security for the payment of said money." It was further resolved that whereas said company is also indebted to the estate of said T. J. Kurtz in the sum of $1419.54 that said sum be included in the note to be delivered as aforesaid, and that said trust deed and bonds shall also be held as security for said sum.

The note authorized by the foregoing resolution was duly executed and delivered. It was dated August 30, 1906, and was payable in six months from date. The amount specified in the note is $16,341.44. This was the amount, with accrued interest, that was due to the bank and to the estate of T. J. Kurtz at that date. In the note for said sum of $16,341.44, in referring to the security, namely, the bonds and mortgage or trust deed aforesaid, it is stated that they were "deposited as collateral security for the payment of this note and of any and all claims, demands or other indebtedness due or not due." The court found that the mat-

ters contained in the foregoing resolutions were true, and further found that the proposition made by the company to said administrator as embodied in the resolutions aforesaid was by him submitted to the district court of Weber County in which the estate of T. J. Kurtz was being administered, and said court authorized the said administrator to pay the debt owing to said bank by said company and to receive the note of said company with the securities as above stated.

The estate of T. J. Kurtz was distributed to his heirs, eight in number, including J. H. Kurtz, the plaintiff, some time after the order aforesaid was made and before this action was commenced. In the decree of distribution the notes and mortgage upon which this action is based were distributed to the plaintiff as trustee in trust for the other heirs, the amount coming to each being fixed by the court, and the right of plaintiff to maintain this action is based upon that decree. The court further found that the property mentioned in the mortgage was, during the three years preceding the commencement of this action, occupied by said company as a health resort, and that the value of said property during said years was largely speculative; that when this action was commenced said company was insolvent; that prior thereto the "company was a going concern, but was embarrassed at all times to pay its debts for want of ready money, and that said company had property ample to pay its debts, if the same could be converted into cash, and at all times prior to the commencement of this suit was engaged in carrying out the objects for which it was incorporated, and that there was no fraud nor intent to defraud any one connected with the loans of the plaintiff or the Pingree National Bank, but at the time of said transactions it was *bona fide* the intent and effort of all parties to continue the defendant company's business and to extend the time of payment of their due obligations." The court also found that said company was indebted in the sum of $1500 upon a note executed and delivered to plaintiff December 22, 1906, and that $1500 was a reasonable attorney's fee

for the foreclosure of the mortgage. The note provided for a ten per cent. attorney's fee. It was also found that the judmènts of the interveners, upon which their complaints in intervention were based, were obtained on May 16, 1907, and on August 22, 1908.

The court ordered judgment for plaintiff as follows: (1) For $16,341.44 and interest on the note of August 30, 1906; (2) for $1500, with interest, on the note of December 22, 1906; and (3) for $1500 as attorney's fee. All of these claims were declared prior and paramount to all other liens, and were to be first paid out of the proceeds of the sale of the property. The court found all the affirmative allegations of fraud and wrongdoing alleged by the interveners to be untrue, entered judgment in favor of them for the amounts of their judgments, but declared their liens subsequent and inferior to plaintiffs mortgage lien, and ordered that any surplus proceeds derived from the sale of the mortgaged premises, after paying plaintiff's lien, be divided pro rata among the interveners, and in accordance with the amounts of their judgments. We remark that the plaintiff in his complaint prayed for the appointment of a receiver to take charge of the property and assets of the company. The court duly appointed a receiver, and it seems he is winding up the affairs of the company as an insolvent corporation.

All of the appellants join in the assignments of error. The errors assigned are very numerous, but counsel for the interveners have condensed the grounds upon which they claim either a reversal or a modification of the judgment. The grounds stated by them are, in substance, as follows: That the action should be dismissed (1) because plaintiff is not the real party in interest and has not legal capacity to sue; (2) because the complaint fails to state a cause of action. The grounds upon which it is urged the judgment should be reversed are: (1) Because several causes of action are improperly joined and commingled in one cause of action; (2) because the court erred both in overruling and sustaining certain objections to certain evidence. That

the judgment should be reversed or modified; (1)   Because the court erred in allowing the item of $1500 as attorney's fee; (2) because the court erred in allowing the amount of $1500 evidenced by the note of December 22, 1906; (3) because the court did not eliminate and deduct from the $16,341.44 a certain claim amounting to $256.24, and, finally, because the court erred in not declaring the mortgage or trust deed void as against the claims of the interveners and in not declaring their judgment liens prior and paramount liens.  It is conceded, however, that, inasmuch as a reciver has been appointed and the assets of the company are in the custody of the court, the court may have power to direct that all the assets of the corporation be converted into cash and to order the funds so obtained to be distributed pro rata among the creditors of said company.

Passing now to a consideration of the alleged errors, we shall refer to the demurrers first.  The company demurred to the complaint upon the grounds that "plaintiff has not legal capacity to sue" and "that the complaint does not state facts sufficient to constitute a cause of action."  The demurrer was overruled.  The defendant Clark demurred upon the grounds just stated, and upon the further ground "that several causes of action have been improperly united in one cause of action."  The interveners attempted to raise the same objections at the trial by objecting to the introduction of any evidence in support of the allegations of the complaint. The first three grounds before stated are based upon the demurrers and the objections of the interveners.  The contention that the plaintiff had not legal capacity to sue is clearly untenable.  Every natural person of lawful age has legal capacity to sue and nothing to the con- **1, 2** trary appeared on the face of the complaint.  The objection that he was not the real party in interest and therefore could not maintain the action is likewise without merit. The district court distributed to plaintiff in trust the claims sued on in this action.  This, the record shows, was with the consent and at the request of all the heirs interested in said claims.  Appellants, however, contend that the court had no

power to distribute the estate of T. J. Kurtz in the manner and for the purpose aforesaid. The court clearly had jurisdiction of both the parties in interest (the heirs) and of the subject-matter (the estate), hence what the court did, if erroneous, was, nevertheless, not void, and is not subject to collateral attack. The objectors in this case could not have assailed the decree of distribution by a direct attack because they were not interested, and if this be so, then, for a much stronger reason, they cannot assail the decree collaterally. The plaintiff clearly had the right to sue in his own name, and all the other heirs are bound by the judgment by reason of their consent to have the plaintiff act for them, if for no other reason. That they are so bound is all that the appellants can require. The court, therefore, committed no error in its rulings respecting the matters just referred to.

The objection that "several causes of action have been improperly united in one cause of action" cannot be sustained. In section 2962, Comp. Laws 1907, it is provided that a party may demur upon the ground "that several causes of action have been improperly united." This provision applies in case a pleader sets forth several causes of action in his complaint which cannot be properly joined in the same action. The demurrer in the case at bar is based upon the ground that several cuses of action have been commingled in one statement as one cause of action. This is not a ground of demurrer, but is a ground for a motion to require the plaintiff to separately state his causes of action as provided in the last subdivision of section 2961. (Phillips' Code Pleading, section 201.) True, a party may demur upon the ground of improper union although the causes of action are mingled in one statement, if the union is not permissible under the provisions of the Code. In the case at bar while each of the two notes sued on constituted a cause of action, these two causes of action could properly have been united in one complaint. If the demurer, therefore, had been based upon the statute, the court still would not have erred in overruling it,

because the causes of action upon the two notes could properly be united in one complaint. Nor did the court err in overruling the demurrer upon the ground that the complaint did not state a cause of action.

The contention that the court erred in overruling appellasnts' objection to the testimony relating to the attorney's fee is untenable. Under our statute (section 3505), the matter of allowing attorney's fees in foreclosure cases is, to a large extent, left to the discretion of the court. The court has a right to fix the fee at a lesser sum regardless of a stipulation for a larger one. The court, therefore, was authorized to hear the testimony of other attorneys to aid it in fixing a reasonable fee.

The assertion that the court erred in allowing any attorney's fee is without merit. The note for $16,341.44 expressly provided for an attorney's fee of ten per cent. We can see no more reason for denying an attorney's fee in this case than in any other of foreclosure. This objection must be overruled.

Nor can the assignment that the court erred in excluding the statement of a certain witness for the interveners of what was said at a particular meeting of the board of directors with respect to what was intended by the board be sustained. Under the issues and in the face of the written evidence before the court, oral evidence upon the subject referred to in the statement of the witness was wholly immaterial, if not improper. Further, even if the statement offered had been admitted, the result still would have to be the same. In either view, therefore, the court's ruling was not prejudicial.

The contention that the court erred in allowing the claim for the $1500 represented by the note of December 22, 1906, and in rendering judgment for the plaintiff and against the company thereon cannot be sustained. But the contention that the court erred in its findings, conclusions, and judgment that said sum of $1500 was secured by the mortgage or trust deed, and hence was prior in right to the judgment liens of the interveners, in our opinion, in view

of the undisputed facts, should be upheld. In the resolution by which the trust deed was directed to be delivered to the plaintiff as security, two and only two claims are specifically mentioned. One is the amount which was owing and then due from the company to the bank, and the other was the amount owing and also then due from. the company to T. J. Kurtz. These two sums amounted to $16,341.44, and were evidenced by the note authorized by the board of directors. True, in the note itself the clause which we have heretofore quoted is contained. But either the president or secretary, or some one else inserted said clause in the note. The president and secretary could not exceed the authority conferred on them by the board of directors, and that authority was limited, in that it authorized the mortgage or trust deed to be delivered as security only for the amount specified in the resolutions which became both the guide and authority for the president and secretary. The president and secretary apparently had no other authority to deliver said mortgage except the authority conferred on them by the resolutions. Plaintiff's counsel do not claim that the resolutions conferred authority to deliver the mortgage as securty for the $1500 claimed, but they do contend that the clause in the note referred to was sufficient authority. In addition to this counsel contend that the company having obtained and retained the benefit of the $1500, and by recognizing the note given as evidence of the same as a subsisting obligation it is estopped from urging that the trust deed and mortgage did not secure that note. As between the plaintiff and the company this argument would have much force, and especially since the corporation is insolvent and is in the hands of a receiver for the purpose of winding up its affairs. But as between the liens of the plaintiff and the judgment liens of the interveners the question is different. The interveners have the right to insist that unless the claims of the plaintiff are in fact secured by a prior lien his general claims must be reduced in right to the general claims of all the corporate creditors. Further, that in view that the corporation is insolvent and its property and assets

are in the hands of a receiver for the purpose of winding up the corporate affairs, all the claims of general creditors must prorate and none should be preferred. In view, therefore, that there is no evidence that the board of directors of the company authorized the president and secretary, or any other officer of said company, to deliver the mortgage or trust deed to plaintiff to secure any other amount than the two specific amounts named in the resolutions adopted by the board of directors, we are of the opinion that the court erred in finding and adjudging that the claim for $1500 aforesaid was secured by the mortgage and trust deed, and that plaintiff by reason thereof was entitled to a prior and paramount lien for said sum against the mortgaged premises over the judgment liens of the interveners.

Th contention that the court erred in not deducting the amount of the note for $256.34 from the larger sum of $16,341.44 cannot be sustained. This amount was clearly included within the resolutions as a debt owing from the company and no good reason is made to appear why said sum should be excluded.

The assignment that the court should have disallowed the entire claim of plaintiff, or, at least, should have declared the mortgage and trust deed as of no effect as against the judgment liens of the interveners is, in our opinion, not well founded. The contention that in securing plaintiff's claim the company while insolvent preferred the claim of an officer or director to the prejudice of the general creditors, in view of the record in this case, cannot be sustained. There is not a scintilla of evidence of actual fraud or of any attempt by any officer or director as a creditor to obtain an undue advantage over other creditors of the company. The money borrowed from the bank was all obtained for legitimate purposes and was all applied to the use and benefit of the company. The original bonds were never negotiated to any one and thus never became an outstanding liability of the company. The trust deed was, however, executed and thereafter delivered and made effective

for a special purpose, namely, to secure the debt owing by the company to the bank. In delivering the mortgage or trust deed for that purpose it in legal effect was the same as if the mortgage or trust deed had been executed and delivered for the express purpose of securing the bank debt. When this debt was subsequently taken up by plaintiff as administrator of the estate of T. J. Kurtz with the consent of the board of directors of the company, and at their solicitation, and the time of the payment of the bank debt was extended for six months, all of which was evidenced by the note for $16,341.44, the delivery of the mortgage and trust deed to plaintiff thenceforth constituted security for the debts mentioned in the resolutions, and the mortgage, in legal effect, was the same as if it had been executed and delivered for the purpose only of securing the debts aforesaid.

This also answers the objection that the action was premature because no demand was made as provided in the bonds. The bonds never became of any effect whatever because never negotiated for any purpose.

Nor is the contenton that since the trust deed and bonds were delivered as collateral security they should have been sold as such security is usually sold of any force. Under the facts and circumstances of this case it is useless to discuss such a contention. The trust deed was in fact delivered to secure plaintiff's debt. The plaintiff had no right to negotiate the bonds of the company, and if he had it would have been a useless ceremony to offer the paper of an insolvent concern. Plaintiff did the only thing he could do, which was to bring an action in equity to foreclose the mortgage.

Nor can we see wherein the facts of this case bring it within the doctrine that insolvent corporations may not prefer the claims of officers or directors. We are of the opinion that the facts of this case bring it clearly within the rule laid down by this court in the cases of *Wells Fargo & Co. v. Geo. M. Scott & Co.*, 18 Utah, 127, 55 Pac. 81, and *National Bank of the Republic v. Geo. M. Scott & Co.*, 18 Utah, 400, 55 Pac. 374.

Nor is the contention that the company was in fact in-

solvent at the time of the transactions complained of sustained by any proof whatever. True, it is contended that since the plaintiff alleged its insolvency when this action was commenced in 1907, and the court so found, that therefore we should assume that the company was insolvent at all times prior to that time. We think that the court's findings on that subject fairly reflect the evidence, and although we are urged to do so, there is no good reason shown why we should disturb the findings.

The contention by the trustee, C. D. Clark, that he was the only proper person to bring suit because he was appointed trustee in the trust deed and bonds, if not already answered by us, is determined adversely to his contention in the case of *Stevens, etc., Co. v. Implement Co.*, 20 Utah, 267, 58 Pac. 843. If there is any distinction between the case at bar and the Stevens Case, *supra*, it is this, that in this case there is much stronger reason for holding that said C. D. Clark was not a necessary party to the action because in this case the instruments in which he was designated as trustee never were actually negotiated nor delivered for the purpose for which they were originally issued but the trust deed subsequently became operative for a different purpose and with that purpose the trustee named therein never had any, nor was intended to have any, connection. In view of the circumstances of this case, Trustee Clark, for all legal and practical purposes, was eliminated from the transaction.

The judgment of the district court is affirmed with the exception of that part which declares the claim of $1500 evidenced by the note of December 22, 1906, a prior and paramount lien against the property mentioned in the trust deed or mortgage. For the purpose of correcting the error in that regard the case is remanded to the district court of Weber County with directions to modify the conclusions of law and the judgment to the effect that said sum of $1500 is not a prior and paramount lien against the mortgaged premises, but that such claim should be classed among the general claims against said corporation, and in winding up

its affairs and in distributing its assets among its creditors said claim should prorate with all the other general claims. In all other things the judgment and decree of the district court is affirmed. Each party is required to pay his own costs on this appeal.

STRAUP, C. J., and McCARTY, J., concur.

ON APPLICATION FOR REHEARING.

FRICK, J.

Counsel for all of the appellants join in a petition for a rehearing in which they strenuously insist that we, in legal effect, have made a contract for the parties different from the one they themselves made, and that after making such a contract for them we have permitted one of the parties to pursue a remedy not contemplated by the contract as made. If counsel's assertion were correct, or if in our judgment there were any reasonable ground even upon which to base it, we should not hesitate to grant a rehearing. The whole contention is, however, based upon the resolution adopted by the board of directors of the company upon which respondent based his right to foreclose the mortgage referred to in the opinion. Counsel, in substance, now contend that the mortgage was originally given to secure certain bonds to the amount of $50,000, due in ten years from August, 1905; that the mortgage was delivered to respondent as collateral security only to secure the payment of the sums of $14,921.90 and $1,419.54, aggregating the sum of $16,341.-44, which became due and payable in six months from August 30, 1906; that neither by the terms of said bonds, nor of the mortgage, nor by reason of any other breach, any cause of action had accrued to respondent when this action was commenced, and hence that this action to foreclose was premature. In making this contention counsel entirely ignore the legal purport and effect of the resolution of the board of directors which authorized the execution of the note and delivery of the mortgage upon which this action is grounded. So

that there might be no misconception in this regard we, in
the original opinion, quoted that portion of the resolution
under which respondent claimed the right to foreclose the
mortgage in question.  We now, without quoting it
again, merely call attention to the language used.      **14**
The language is not, as contended by counsel, that
the mortgage was to be delivered merely as collateral, but
the language is that the mortgage was to be delivered as
"security for the payment of said money."  By "said money"
is meant the $16,341.44 which was made payable in six
months from the time said resolution was passed, and every
act, word, and deed of the parties to said transaction, as
shown by the evidence adduced at the trial, documentary
and otherwise, indicate that the property described in the
mortgage was intended as a pledge to secure the payment of
respondent's claim, and that the respondent should have the
usual statutory remedy in case of default of payment that
all other mortgagees have under the terms of our statute.
In view that the original bonds never were sold or negotiated
no other conclusion than the one just stated is permissible.
We cannot assume that the parties intended that the re-
spondent should not enjoy the usual remedy to enforce the
collection of his claim that all other mortgagees enjoy, when
no such intention was indicated in the resolution or agree-
ment, and when a contrary intention is indicated by the
language used in the resolution aforesaid.  When the prop-
erty described in the mortgage was in fact pledged to secure
the payment of respondent's claim, and when that claim was
past due, by what authoity can this court say that respond-
ent shall be deprived of his legal remedy to enforce pay-
ment?  We have always assumed that courts were institut-
ed to enforce contracts and to apply the remedies provided
by law for their enforcement.  This is all the district
court did in this case, and this is all that we have approved
in the original opinion.  In our judgment there can be
no doubt whatever that the board of directors of the company
in delivering the mortgage to respondent intended that the
property therein described should constitute security for

the payment of the $16,341.44, and that when that amount should become due and remain unpaid that respondent should have his remedy by the statutory action to foreclose said mortgage, and to sell the property therein described the same as he might have foreclosed any mortgage given to secure a debt under the statutes of this state.

It is also contended that we erred in apportioning costs. As we view the case, no other apportionment would reflect justice. There being no cause shown why a rehearing should be granted, the application should be, and it accordingly is, denied.

STRAUP, C. J., and McCARTY, J., concur.