## JENSEN v. LICHTENSTEIN et al.

No. 2690.  Decided January 9, 1915 (145 Pac. 1036).

1. MORTGAGES—FORECLOSURE—ACTIONS.  Under Comp. Laws 1907,
   section 3498, declaring there can be but one action for the re-
   covery of any debt secured by a mortgage, no personal judg-
   ment is authorized in such an action until after the mortgaged
   property has been sold and the proceeds derived from the sale
   applied to the payment of the debt and then only for the de-
   ficiency.[1]  (Page 323.)

2. MORTGAGES—FORECLOSURE—ASSESSMENT OF ATTORNEYS' FEES.  In
   a suit to foreclose a mortgage, the court, in determining what
   is a reasonable attorney's fee may, whether he has or has not
   sufficient data, call to his assistance attorneys engaged in the
   practice and take their judgment under oath respecting what
   would be a reasonable amount.[2]  (Page 323.)

3. MORTGAGES—FORECLOSURE—ATTORNEYS' FEES—"REASONABLE AT-
   TORNEY'S FEE."  Comp. Laws 1907, sections 3504, 3505, declare
   that in all cases of foreclosure when an attorney's fee is claimed
   no amount shall be allowed greater than the sum which shall
   appear by the evidence to be actually charged by and to be
   paid to the attorney, and that the attorney's fee shall be fixed
   by the court in which the proceedings are had, any stipulation
   in the mortgage to the contrary notwithstanding.  A note se-
   cured by a mortgage provided for a ten per cent attorney's
   fee, while the mortgage provided for a reasonable attorney's
   fee.  Held, that under the statutes only a "reasonable attor-
   ney's fee" should be allowed, by which is meant one reasonable
   under all the facts and circumstances, and it is error for the
   court to fix a ten per cent attorney's fee without determining
   whether it is a reasonable one.[3]  (Page 323.)

4. MORTGAGES—CONSTRUCTION—LIEN.  Where a mortgage provided
   that in case of foreclosure the mortgagor should be liable for
   a reasonable attorney's fee, the attorney's fee allowed, becomes
   a lien on the property secured by the mortgage.  (Page 327.)

5. EXCEPTIONS, BILL OF—TIME OF FILING.  Comp. Laws 1907, sec-
   tion 3286, provides that a party desiring to have exceptions

[1]*Boucofski* v. *Jacobsen*, 36 Utah 165; 104 Pac. 117; 26 L. R. A.
(N. S.) 898.

[2]*Kurtz* v. *Sanitarium Co.*, 37 Utah 313; 108 Pac. 14.

[3]*McCornick* v. *Swem*, 36 Utah 7; 102 Pac. 626; 20 Ann. Cas. 1368;
*Bank* v. *Nelson*, 38 Utah 169-198; 111 Pac. 907.

settled in a bill may within thirty days after service of notice of the entry of judgment serve the bill upon the adverse party. Plaintiff who recovered served notice of entry of judgment, and defendant thereupon served a copy of the proposed bill of exceptions. As defendants incorporated in their bill only so much of the proceedings material to their appeal, plaintiff who objected to a portion of the judgment attempted to perfect a second bill of exceptions. *Held*, that plaintiff was not entitled to notice of entry of judgment in order to start limitations against the filing of his bill. (Page 329.)

6. BILLS AND NOTES—CONSTRUCTION. Where a note provided that if interest should remain unpaid for thirty days then the principal sum and accrued interest shall at once be due and payable at the option of the holder of the note and shall draw interest at the rate of twelve per cent, the holder of the note is not, upon the maker's default in the payment of interest, entitled, where he did not declare the entire sum due, to recover twelve per cent interest. (Page 331.)

7. BILLS AND NOTES—INTEREST. Where a note provided for payment of interest in regular installments and the maker defaulted, the maker became liable for interest on the sums in default at the rate of eight per cent, as fixed by Comp. Laws 1907, section 1241. (Page 333.)

Appeal from District Court, Third District, *Hon. George G. Armstrong,* Judge.

Action by F. C. Jensen against M. B. Lichtenstein and another.

From the judgment defendants appeal and plaintiff cross-appeals.

REVERSED AND REMANDED WITH DIRECTIONS.

*Lewis Larson* for plaintiff.

*Stephens, Smith & Porter* and *Harold M. Stephens* for defendants.

FRICK, J.

The plaintiff commenced this action against the defendants in the district court of Salt Lake County to foreclose a mortgage given to secure the payment of the following note:

"Salt Lake City, Utah, June 25, 1909. $10,000. Two (2) years after date, for value received, we jointly and severally promise to pay to Utah Savings & Trust Company, or order, ten thousand dollars, with interest thereon at the rate of seven per cent per annum from date until paid, both before and after judgment. Interest payable quarter-yearly to the Utah Savings & Trust Co., whose receipt for same shall be accepted without the presence of this note. If any interest remains due and unpaid for the period of thirty days then the principal sum and all accrued and unpaid interest shall at once be due and payable at the option of the holder of this note and the principal sum and all unpaid interest shall then draw interest at the rate of twelve per cent per annum until paid. The principal sum and interest payable in United States gold coin at the banking house of Utah Savings & Trust Company, in Salt Lake City, Utah. In case this note is collected by an attorney either with or without suit we agree to pay in addition thereto ten per cent of the principal amount of said note as attorney's fees."

The action was brought in April, 1913, and the only provision in the mortgage which is material upon this appeal is the following:

"If the indebtedness secured hereby should become due and payable and this mortgage is placed in the hands of an attorney for collection, the mortgagors agree to pay five per cent of such indebtedness in addition thereto as costs of collection; in case foreclosure proceedings herein be instituted, the mortgagors agree to pay as attorney's fees, a reasonable amount in addition to the indebtedness secured thereby."

The complaint is in the usual form in foreclosure actions. Plaintiff, however, alleged that the defendants had made default in the payment of interest, and had paid no interest after the 10th day of December, 1910, and that for that reason in thirty days from that date, to-wit, from January 6, 1911, according to the tenor of the note secured by the mortgage in question, he was entitled to twelve per cent interest upon the principal and upon the interest remaining unpaid. It was also alleged that by the terms of said note the defendant had agreed to pay ten per cent of the principal sum as

attorney's fees in the event the note should be collected by an attorney; and also pleaded the clause contained in the mortgage concerning the payment of attorney's fees, and alleged that $1,000 was a reasonable attorney's fee. It was further averred that the plaintiff was compelled to pay $512.43 taxes on the mortgaged premises, upon which sum he was entitled to twelve per cent interest, which is the amount fixed by our statute.

The defendants appeared and filed an answer to the complaint. The only issues presented by the answer related to the rate of interest and the attorney's fee claimed by plaintiff; the defendants contending that plaintiff was entitled to only 7 per cent interest and to a sum not exceeding $500 as attorneys' fees.

On the hearing plaintiff produced the note and mortgage in evidence, proved the payment of taxes as alleged in the complaint, and also made the following proof respecting the payment of attorney's fees (plaintiff testify- **1, 2, 3** ing):

"Q. Now, Mr. Jensen, relative to the attorney's fees in this case, have you any agreement as to what amount of attorney's fees you are to pay for the services? A. A thousand dollars. Q. And with whom is that agreement? A. My attorney, Lewis Larson. Q. Is that contingent upon the result of this case in any way? A. There is nothing said about the result of the case in our agreement. Q. Your understanding is that you are to pay $1,000 for my services in this case? A. Yes, sir. Q. And you have agreed to do so? A. Yes, sir. * * * After I purchased the note and mortgage, they were left with the Utah Savings & Trust Company for collection. I wrote a notice to the trust company authorizing Mr. Larson to receive all of the papers pertaining to this mortgage."

The foregoing is substantially all the evidence produced by the plaintiff, and the defendants offered none.

The court found the amount due upon the note and mortgage, including interest to January 14, 1914, to be $12,173.87, upon which sum it allowed plaintiff 7 per cent interest after judgment. The court also found that the plaintiff was en-

titled to the sum of $558.84 for taxes paid, which includes 12 per cent interest. The court further found "that a reasonable attorney's fee herein is $1,000," and that the plaintiff had agreed to pay said sum to his attorney as an attorney's fee in this case, and the attorney's fee, as well as the other sums found due, were declared to be secured by the mortgage aforesaid. A decree of foreclosure was accordingly entered on the 28th day of January, 1914, and the mortgaged premises were ordered sold to satisfy the several sums of money, with interest as aforesaid. Both parties appeal from the judgment.

The defendants, upon their appeal, in substance, insist that the court erred: (1) In allowing $1,000 attorney's fee, and in allowing any sum in excess of $500; (2) in declaring said attorney's fee a lien upon the mortgaged premises; (3) in adding the accrued and unpaid installments of interest to the principal up to January 14, 1914, the date the court announced its oral decision, and in allowing interest on the interest so added after judgment; and (4) in settling and allowing plaintiff's bill of exceptions.

It is insisted that the court erred in finding that $1,000 is a reasonable attorney's fee for the reason that there is no evidence sustaining such a finding. We have a statute (Comp. Laws, 1907, secs. 3504 and 3505) which reads as follows:

"Sec. 3504. In all cases of foreclosure, when an attorney or counsel fee is claimed by the plaintiff, no other or greater amount shall be allowed or decreed than the sum which shall appear by the evidence to be actually charged by and to be paid to the attorney for the plaintiff; and if it shall appear that there is an agreement or undestanding to divide such fees between the plaintiff and his attorney, or between the attorney and any other person except an attorney associated with him in the cause, only the amount to be retained by the attorney or attorneys shall be decreed as against the defendant.

"Sec. 3505. In all cases of foreclosure by proceeding in court, the attorney's fee shall be fixed by the court in which the proceedings of foreclosure are had, any stipulation in said mortgage to the contrary notwithstanding."

From the evidence we have set forth it is apparent that the plaintiff attempted to comply, and, as we think, has sub-

stantially complied, with the provisions of section 3504, *supra*. Defendant's counsel, however, insist that the provisions of section 3505 were not complied with either by the court or counsel. As we have seen, the court found $1,000 to be a reasonable attorney's fee. The note provided for that amount, while the mortgage only provided, in case of foreclosure, for a reasonable attorney's fee. Under our statute (Comp. Laws 1907, section 3498) "there can be but one action for the recovery of any debt or the enforcement of any right secured by mortgage," and, under the decisions of this court (*Boucofski* v. *Jacobsen*, 36 Utah, 165; 104 Pac. 117; 26 L. R. A. (N. S.) 898, and cases there cited) no personal judgment is authorized in such an action until after the mortgaged property has been sold and the proceeds derived from such sale are applied to the payment of the debt, and then only for the deficiency. Such an action is therefore not personal, but is strictly one *in rem*, at least until after the mortgaged property is sold and the proceeds thereof have been applied in discharge of the debt. Sections 3504 and 3505, no doubt, were adopted for the purpose of protecting debtors against being required to pay excessive attorney's fees in foreclosure suits. It was, however, not intended that personal actions upon notes should be affected by these sections. Anything therefore that was said in *McCornick* v. *Swem*, 36 Utah, 7; 102 Pac. 626; 20 Ann. Cas. 1368, or in *Bank* v. *Nelson*, 38 Utah, 169-198; 111 Pac. 907, upon the subject of attorney's fees, has no application here. By the very terms of section 3505 it is limited to "foreclosure suits."

In such proceedings, however, the trial court cannot escape the responsibility of determining and declaring what amount shall be allowed as an attorney's fee, regardless of any stipulation of the parties upon that subject that may be contained in either the note or mortgage. By a "reasonable fee," no doubt, is meant one which is reasonable under all the facts and circumstances of each case. What is reasonable, therefore, in a large measure at least, must depend upon the amount in controversy, the labor, and responsibility imposed

upon the attorney in obtaining judgment, as these things may have arisen from the issues presented and tried. If an attorney is required to do no more than to prepare the formal pleadings and decree in a default case, a smaller sum, no doubt, would be reasonable, than in a contested case, and especially in one where the issues were numerous and where intricate questions of both fact and law arose and had to be determined. It should not be assumed by the court that, simply because the parties have named ten per cent, or any other amount, in either the note or mortgage, that that is the amount that should be allowed. The trial courts, in each case, become familiar with all the issues, know just what the facts and circumstances developed at the hearing are, and thus are in a position to arrive at an intelligent and just conclusion respecting the amount that should be allowed as the reasonable fee contemplated by our statute. In case, however, the court has insufficient data upon which to base a finding, or even though he has such data, he may nevertheless, as pointed out in *Kurtz* v. *Sanitarium Co.,* 37 Utah, 313; 108 Pac. 14, call to his assistance attorneys engaged in the practice and take their judgment under oath respecting the amount that would be reasonable in any given case. While the court, in the case at bar, had before it what little evidence that was submitted, yet, in view that it allowed the precise amount named in the note, the conclusion is forced upon us that the court was controlled by the amount there named, rather than by any facts and circumstances that were developed in the case. This is just what the statute prohibited the court from doing. If the course apparently pursued in this case is permitted, then section 3505, *supra,* is practically nullified. Without expressing any opinion (and in view of our conclusions, to do so would perhaps be improper at this time) respecting what would constitute a reasonable fee in this case, and without intimating that the amount allowed is either reasonable or otherwise, we are forced to the conclusion that the amount allowed by the court, for the reasons stated, cannot be sustained upon this record. Defendants' assignment in that regard therefore must prevail.

We cannot agree with counsel, however, that a reasonable fee was not intended to be secured by the mortgage, and therefore should not be declared a lien upon the mortgaged premises. We are clearly of the opinion that it was the 4 manifest purpose and intention of the parties to the mortgage that a reasonable attorney's fee should be secured thereby, precisely the same as the principal, interest, and taxes mentioned therein were to be secured. It seems almost like a work of supererogation to attempt to demonstrate that the foregoing construction is the only proper one that can be placed upon the mortgage in question. If therefore it were not for some decisions from the California Supreme Court, for whose decisions we entertain the highest respect, we should not pause here to give this question further attention. In view, however, that counsel vigorously insist that we should follow those decisions, we shall briefly refer to at least some of them. The cases especially relied on by the defendants hold that, unless the attorney's fees mentioned in the mortgage are, in apt terms, made a lien on the mortgaged premises, or are declared to be secured by the mortgage, they are not a lien upon the mortgaged premises, but are only a personal obligation of the mortgagor. The following cases so hold: *Clemens* v. *Luce,* 101 Cal. 432; 35 Pac. 1032; *Sainsevain* v. *Luce,* 4 Cal. Unrep. 496; 35 Pac. 1033; *Lee* v. *McCarthy,* 4 Cal. Unrep. 498; 35 Pac. 1034; *Cooper* v. *McCarthy,* 36 Pac. 2; *Barnett* v. *Mulkins,* 40 Pac. 115; *Klokke* v. *Escailler,* 124 Cal. 297; 56 Pac. 1113; *Cortelyou* v. *Jones,* 132 Cal. 131; 64 Pac. 119; *Orange Growers' Bank* v. *Duncan,* 133 Cal. 254; 65 Pac. 469. Upon the other hand, in the following cases decided by the same court it was held that under the terms of the mortgages there in question the attorneys' fees were a lien, namely: *O'Neal* v. *Hart,* 116 Cal. 69; 47 Pac. 926; *County Bank* v. *Goldtree,* 129 Cal. 160; 61 Pac. 785; *Peachy* v. *Witter,* 131 Cal. 316; 63 Pac. 468; *Haensel* v. *Pacific States S. & L. & B. Co.,* 135 Cal. 41; 67 Pac. 38; *Worth* v. *Worth,* 155 Cal. 599; 102 Pac. 663.

We shall not review all of those cases, nor attempt to reconcile them. We shall pause long enough, however, to compare two of those decisions. In *Klokke* v. *Escailler, supra,* which

falls within the first group of cases cited, the mortgage contained the following provision:

. Upon default "the mortgagee may foreclose this mortgage, and may include in said foreclosure a reasonable counsel fee, to be fixed by the court, together with all payments made by the mortgagee for insurance upon the buildings on said premises, and for any adverse claims to the mortgaged property, for searching title to the mortgaged premises, to the execution hereof, and for taxes on said premises, other than the taxes on this mortgage, or the money hereby secured, all of which payments the mortgagee is hereby authorized to make and the same, with interest thereon at the same rate as provided in said promissory note, shall be deemed to be secured by this mortgage and payable to the mortgagee or assigns in and out of the proceeds of the sale under said foreclosure."

It was held that all the things enumerated above were secured by the mortgage except the attorney's fees. We cannot understand how the court arrived at any such conclusion. As we read the stipulation contained in the mortgage, which we have set forth above, the attorneys' fees, under any reasonable construction, were secured thereby, precisely the same as were the insurance money, the taxes, and other items of expense.

In the case of *Worth* v. *Worth, supra*, which is found in the second group of cases cited above, it was said:

"The language of the mortgage as to counsel fees is practically the same as that contained in the mortgage in *Klokke* v. *Escailler*, 124 Cal. 297 (56 Pac. 1113), where it was held that the counsel fees were not secured by the mortgage. But this case differs from that in that the note here contains a provision for 'seven per cent. on principal, as attorneys' fees in such suit,' in the event suit is commenced to enforce payment of the note. The mortgage was given to secure 'said note,' which included the contract to pay the attorney fee provided for therein. The attorney fee was therefore secured by the mortgage."

As we read the California cases cited in the first group, many of them contained much stronger language from which it was apparent that the parties to the mortgages there in question intended to secure the attorney's fees as well as the

principal and interest, than is the language quoted from *Worth* v. *Worth*, and yet the conclusions of the same court in the two groups of cases are diametrically opposed to each other. We are unable to reconcile the California cases upon this question.

The Supreme Court of New Mexico, in the case of *Armijo* v. *Henry,* 14 N. M. 181; 89 Pac. 305; 25 L. R. A. (N. S.) 275, discusses the rule which prevails upon this question in California, and it is there said, "The weight of authority is against the rule laid down by the California courts." Hence that court refused to follow the California cases. We agree with the Supreme Court of New Mexico in the statement just quoted. Moreover, in this jurisdiction the trial courts have always construed provisions to pay attorneys' fees like the one in question as being a lien upon the mortgaged premises. While such a construction has never been passed on or approved by this court, yet, in view that in our judgment it was clearly the intention of both the mortgagors as well as the mortgagee to secure a reasonable attorney's fee by entering into the stipulation in the mortgage, we do now approve such a construction. We further hold that under our statute the question respecting the payment of an attorney's fee is a matter of contract, but what is a reasonable fee in each case must be determined by the court.

The contention that the court erred in adding the accrued and unpaid interest to the principal and in allowing interest at 7 per cent. on the whole amount of principal and interest is untenable. As we shall endeavor to show hereafter, the plaintiff's, and not the defendants', legal rights were invaded by the court's ruling in that regard.

The contention that the court erred in settling and allowing the plaintiff's bill of exceptions is well taken. The court's ruling is in the teeth of all the former decisions of this court upon that question. The record shows that the judgment or decree was filed and entered January 28, 1914, and that on May 25, 1914, plaintiff's counsel served notice of the decision upon defendant's counsel. That notice set in motion the time from which defendants were required to prepare and serve a bill of exceptions under the provisions

of Comp. Laws 1907, section 3286. From the service of that notice defendants had thirty days within which to prepare and serve their proposed bill of exceptions, unless they, within said thirty days, obtained an order from the court or judge for additional time. This is not disputed. There is no claim that the defendants did not comply with the provisions of the statute or the rulings of this court in preparing, serving, having allowed, and in filing their bill of exceptions. When defendants therefore signified their intention to appeal, and having incorporated into their bill of exceptions only so much of the proceedings as they deemed material to their appeal, the plaintiff also attempted to have settled and allowed his bill of exceptions in which he proposed to include all of the proceedings which had been omitted from defendants' bill. The plaintiff had, however, obtained an order from the district court in which he was given to and including April 10, 1914, within which to prepare and serve a proposed bill of exceptions, and also obtained a further order extending his time to do so to May 20, 1914. The plaintiff, however, did not prepare his bill within the time aforesaid; nor did he obtain any further order extending his time, but, notwithstanding his failure to do so, he, on June 16, 1914, served his proposed bill of exceptions, and the court, over the objections of the defendants, on June 25th following, settled and allowed the same. Counsel for defendants contend that, because the proposed bill was not served within the time fixed by the court under the repeated ruling of this court, the district court was without power to settle and allow the proposed bill. The only answer plaintiff makes to this contention is that under the provisions of section 3286, *supra*, he was entitled to notice of the decision from defendants' counsel, and, in view that no such notice was served upon him, therefore his time within which to prepare and serve a proposed bill of exceptions had not commenced to run when his proposed bill was in fact served. To hold that the Legislature intended that both parties must serve and are entitled to notice of the entry of a decision in a particular case is to hold that it intended something unreasonable, if not absurd. The whole purpose of the statute is to give the aggrieved party,

who may intend to appeal, sufficient time within which to prepare and serve his proposed bill of exceptions, in which either all or so much of the proceedings of the trial court may be set forth as may be deemed necessary to such appeal. The notice provided for in the section is intended to set the time in motion within which the proposed bill of exceptions must be prepared and served. Now, is it reasonable to suppose that the party who prepares and serves the notice, which must contain a statement of the time that the decision was filed, is entitled to a further notice of what he must be conclusively presumed to know? Is not the notice which he prepares and serves upon his adversary also notice to him of what it contains? Why should it be held to impart notice to the person upon whom served but not upon him who is required to prepare and serve it? As already intimated, to so hold would, in our judgment, lead to an absurdity. Under all of our holdings, therefore, the court was without power to settle and allow plaintiff's proposed bill of exceptions and therefore we cannot consider it for any purpose.

This brings us to plaintiff's appeal. While, as we have seen, we cannot consider his bill of exceptions or the evidence therein preserved for any purpose, yet there is at least one, perhaps two, of the assignments of error which **6** plaintiff is entitled to have reviewed upon the judgment roll and upon defendants' bill of exceptions when considered with the judgment roll. The first assignment of error of that character is that the court erred in the construction of the note in question respecting the rate of interest the plaintiff is entitled to thereunder. As we pointed out, plaintiff, in his complaint, prayed for 12 per cent. interest from and after January 6, 1911, which was thirty days after defendants made default in the payment of interest. Plaintiff does not claim that he exercised the option of declaring the principal due and payable, as he, in case of default in payment of interest, was authorized to do by the terms of the note. He, however, contends that in order to entitle him to the increased rate of interest it was not necessary that he should declare the note due and payable, but that he was entitled to the twelve per cent. after a default had continued

for thirty days. While it is true that unless defendants made default in the payment of interest the increased rate could not be enforced, yet it is also true that the default alone did not give the right to demand twelve per cent. interest instead of the seven per cent. stipulated in the first sentence of the note. The note must be construed and considered as a whole. The principal promise or obligation in the note respecting the payment of interest is that it bears interest at the rate of "seven per cent. per annum from date until paid both before and after judgment." Then comes the subsidiary promise, namely, that the interest is payable "quarter-yearly." This is followed by the condition:

"If any interest remains due and unpaid for a period of thirty days, then the principal sum and all accrued and unpaid interest shall at once be due and payable *at the option of the holder of this note,* and the principal sum and all unpaid interest *shall then* draw interest at the rate of twelve per cent. per annum until paid." (Italics ours.)

To our minds, this means simply this: That the note bears seven per cent. interest, payable quarterly. If, however, the payee makes default in the payment of interest and remains in default for a period of thirty days or more, then the holder of the note may declare the principal sum due and payable forthwith, and, in case he does so, as expressed in the note, it "shall then draw interest at the rate of twelve per cent. per annum until paid." The word "then" is used in the note as denoting consequences, or pointing to a result, and has the same meaning and effect as though the phrase "in that case" or "in such case" had been used. That is, if the interest is not paid and the holder of the note exercises the option given him, then—that is, in that case, or in such event—the rate of interest shall be increased to twelve per cent. In order to have that effect, however, the defendants' default in the payment of interest and the exercise of the option to accelerate the maturity of the note must concur. If therefore at any time after thirty days' default in payment of interest, and before the note, according to its terms, had matured, the plaintiff had exercised the option, he would have been entitled to demand and receive twelve per cent. interest; but, not having

done so, he is limited to the seven per cent. named in the note, so far, at least, as the principal is concerned. The following cases, in our judgment, clearly pass upon and sustain our views upon this subject: *Mortgage Trust Co.* v. *Bach,* 69 Kan. 749; 77 Pac. 545; *Keys* v. *Lardner,* 55 Kan. 331; 40 Pac. 644; *Kennedy* v. *Gibson,* 68 Kan. 612; 75 Pac. 1044.

Although the plaintiff is not entitled to 12 per cent. interest, as we have just held, yet we think the court erred in computing the interest to which he, under our statute (Comp. Laws 1907, section 1241), is actually entitled.  **7** In view that plaintiff failed to exercise the option to demand twelve per cent. interest, there is no express contract between the parties concerning the rate of interest on accrued and unpaid interest after it became due and payable at the end of each quarter. In such case our statute (section 1241, *supra*), fixes the rate. That section provides:

"The legal rate of interest upon the loan or forbearance of any money, * * * shall be eight per cent. per annum."

Defendants had promised to pay the interest quarterly. There thus fell due at the end of each quarter the sum of $175 as interest. This amount was owing from defendants to the plaintiff at the end of each quarter after the 6th day of December, 1910, when the last interest was paid as found by the court. If defendants had paid plaintiff the interest when due, he could have reloaned it to them, or could have loaned it to any one else, and could have contracted for any rate of interest not exceeding twelve per cent per annum. In case, however, the loan had been made and no rate of interest was agreed upon, the statute would have supplied the omission by fixing eight per cent. as the legal rate. The plaintiff therefore was as much entitled to interest upon the unpaid interest as though it had been paid to him when due and he had reloaned it, and, in view that no rate was agreed upon, the legal rate of eight per cent. applied. The court therefore should have awarded plaintiff eight per cent. interest per annum upon each quarterly installment of interest amounting to $175 from the time it became due until the principal and interest were merged into judgment, to-wit, to the 28th day

of January, 1914. When therefore the several sums of $175, with interest thereon at the rate of eight per cent. per annum from the date they severally became due until the judgment was entered as aforesaid, are all added to the principal, the total amount is the amount for which judgment should be entered. When that amount is ascertained, then the agreement in the note again controls which provides for interest at the rate of seven per cent. per annum after judgment.

In view that the plaintiff has no bill of exceptions, we cannot consider the other assignments of error on his appeal.

For the reasons stated, therefore, the findings and judgment must be modified. The case is therefore remanded to the district court of Salt Lake County, with directions: (1) To set aside its findings in which the attorney's fees are fixed at the sum of $1,000, and to hear any competent evidence the parties, or either of them, may offer upon the question of what amount should be fixed in this case as a reasonable fee, and, after hearing such evidence, or any other competent evidence upon that subject that the court may call for on its own motion, to fix a reasonable sum as an attorney's fee as contemplated by section 3505, independently of the provision contained in the note; (2) to determine the amount of interest at the rate of eight per cent. per annum that plaintiff is entitled to upon the accrued and unpaid installments of interest from the respective dates the several installments became due until the 28th day of January, 1914, and after adding all of the accrued interest to the principal modify the judgment accordingly; (3) to enter judgment as modified as of the date of January 28, 1914, which judgment shall, from that date, bear interest at the rate of seven per cent. per annum. In all other respects the findings and judgment are affirmed. Neither party to recover costs on this appeal.

STRAUP, C. J., and McCARTY, J., concur.