WATKINS & FABER, a partnership,
Plaintiff and Respondent,

v.

John M. WHITELEY, an Individual and
Intermountain Capital Corporation of
Utah, a Utah Corporation, Defendants
and Appellants.

No. 15831.

Supreme Court of Utah.

March 12, 1979.

Robert J. Debry and Valden P. Livingston, Salt Lake City, for defendants and appellants.

Rinehart L. Peshell, Salt Lake City, for plaintiff and respondent.

PER CURIAM:

This is an action to collect attorneys' fees for legal services performed on behalf of the defendants or one of them. The jury rendered its verdict in favor of the plaintiffs in the amount of $9,094.70 against John M. Whiteley.

Mr. Whiteley is the president of the corporate defendant. It was admitted that the plaintiff had rendered legal services in the amount of $9,094.70 and the only question for the jury to decide was whether the president of the corporate defendant made himself personally liable for all services rendered. It was agreed that of the sixteen occasions when plaintiffs represented the defendants, ten of them were in cases wherein only the corporation was named as a party, four of them were in cases where only Mr. Whiteley was named a party, and two of them were where both defendants were named as parties.

The evidence was such as to justify the verdict and no exceptions were taken to the instructions given to the jury. The only claim of reversible error made by Mr. Whiteley on this appeal is a claim of error on the part of the court in not granting a motion for a mistrial because of a question asked Mr. Whiteley on cross-examination.

Mr. Faber had represented the corporate defendant in the case of *Robertson*, plaintiffs and respondents v. *Geis*, et al., defendants and appellant; *Intermountain Capital Corporation of Utah*, a corporation, defendant, third-party plaintiff and appellant v. *John W. Robertson*, et ux, third-party defendants.[1]

Whether Mr. Whiteley was personally responsible for the legal fees in that case was involved in the instant action. On cross-examination the following proceedings occurred:

Q. And you were present in Court yesterday when Mr. Faber testified that you were involved personally in those matters weren't you? And you heard that testimony didn't you?

MR. LIVINGSTON: [Counsel for defendants] Your Honor, I would like to object to that as a mischaracterization of what Mr. Faber said. He didn't say Mr. Whiteley was personally involved in it, and he said he was involved in it. And Mr. Whiteley was certainly involved in those matters because he was president of the corporation, but that doesn't mean he was personally involved.

MR. PESHELL: I believe Mr. Faber did testify that Mr. Whiteley was personally involved in all of those cases.

THE COURT: Objection overruled.

Q. [By Mr. Peshell] Answer the question, Mr. Whiteley.

A. The only involvement that I had in those cases was as a representative of Intermountain Capital Corporation. I had no, I had no investment in them. I had no personal interest. It was representing the interest of Intermountain Capital.

Q. But you were involved then in the *Robertson v. Geis* case; is that accurate?

A. As a representative of Intermountain Capital purely.

Q. All right. Isn't it true, well, isn't it true that the District Court and the Supreme Court of the State of Utah specifically found that you were involved in the scheme of deceit against an old couple by the name of Robertson to deprive them of their property in the *Robertson v. Geis* case?

A. That is not true.

MR. LIVINGSTON: Your Honor, I object to that on the grounds it calls for a legal conclusion.

MR. PESHELL: Doesn't either. Not what the Court found, Your Honor. It is a matter of public record.

---

1. *Robertson v. Geis*, 30 Utah 2d 449, 519 P.2d 886 (1974).

THE COURT: Objection overruled.

Q. [By Mr. Peshell] Mr. Whiteley, have you had an opportunity to see the Supreme Court decision that was in that case?

A. I imagine that I have.

Q. And you have read that decision?

A. Yes. I don't recall exactly how it is worded at this point.

Q. Mr. Whiteley, I am going to read to you from that decision, and I want to know whether these statements are true. Are true. Reads as follows: Appeal from a judgment in a case tried to the Court, that awarded damages for deceit against defendants Geis and Smith, and against defendant Intermountain Capital avoiding a mortgage against plaintiffs' realty.

Goes on: This case had to do with defendant Geis, neighbor of plaintiffs, an elderly couple, in obtaining a deed from them for some realty, to be used as collateral. The purpose was to obtain funds to promote a second-hand equipment sales project in South America, by a Bermuda corporation created by defendant Smith. His interests were promoted by Geis who, as agent for him and his corporation and aided somewhat by one Whiteley, assisted in forming a Utah corporation in order to get a Federal small business investment loan, not available to a foreign corporation. It appears from the record to have been a dummy corporation designed to do something indirectly that could not have been done directly in a promotional scheme at the outset. This was compounded by Smith's residence in Bermuda—which also was compounded by Whiteley, a friend of Geis and Smith, but not the plaintiffs.

Now as I suggested, you have had an opportunity to read that, this decision. Isn't that correct, Mr. Whiteley?

A. Is that part of the actual decision, or is that a summarization or—    .

Q. That is the actual decision, Mr. Whiteley.

MR. LIVINGSTON: Maybe, Mr. Rinehart, you could show it to Mr. Whiteley so he could look at it.

THE WITNESS: Are you interested in my understanding of this?

Q. [By Mr. Peshell] Well, I want to know if that is the decision that was handed down by the Supreme Court of the State of Utah?

A. Well, I assume that it is in, that the Supreme Court did find fraud on the part of the individuals that Intermountain Capital loaned money to. And that is the only part that we played in it, is that we furnished these fellows a lot of money and lost it.

Q. But they also state in there 'assisted by one Whiteley,' do they not?

MR. LIVINGSTON: Your Honor—

THE WITNESS: We assisted in loaning them some money. How can that be part of fraud?

MR. LIVINGSTON: Your Honor, I have an objection and a motion to make at this time, which I think ought to be held outside of the presence of the Jury. May we approach the Bench?

The defendant on appeal claims that the question propounded to him as set out above was an unfair one in that it gave the jury the impression that he was involved in a scheme to cheat an elderly couple.'

The plaintiffs in their brief state that the matter was gone into by defense counsel in his opening statement to the jury. That statement is not before us and so we cannot say whether the matter was opened up or not. Certainly the court found that Smith and Geis aided by Whiteley and his corporation (which was a named party) were instrumental in organizing "a dummy corporation designed to do something indirectly that could not have been done directly in a promotional scheme at the outset. This was compounded by Smith's residence in Bermuda—which also was compounded by Whiteley, a friend of Geis and Smith but not the plaintiffs. . . ."

Whiteley was not a party to that suit and was defenseless against the accusations against him as set out in the opinion. But was the matter prejudicial to the extent

that the court should have granted a mistrial?

In the first place it appears that the matter was not properly and timely brought to the attention of the trial court. The objection made was that it called for a legal conclusion. Then defendant's counsel suggested that Mr. Whiteley be handed a copy of the decision. After the matter had been thoroughly discussed, counsel for defendant then indicated a desire to make a motion out of the presence of the jury. The court suggested that he make it at recess and he agreed to do so.

During the next recess defense counsel did move for a mistrial and during the argument following the motion he stated:

MR. LIVINGSTON: Your Honor, maybe so that we could work this out I would be amenable if the Court rather than ruling on the motion for a mistrial, if the Court would give a Jury instruction to the effect that that was a misstatement of law as to whether Mr. Whiteley was convicted of fraud, and that that is not relevant in this case and not to be considered in this case by the Jury in their deliberations as to what the agreement was between the parties and who is going to pay for the attorney's fees.

The court denied the motion for a mistrial and gave the following instruction to the jury:

Any evidence or inference which may have been made in this courtroom that Mr. Whiteley was named personally in the case of *Roberston v. Geis*, et al, is incorrect as Mr. Whiteley was not a party to that lawsuit and you should disregard any such inferences or evidence.

The granting of a motion for a mistrial lies in the sound discretion of the trial judge and his ruling should be overturned only when it clearly appears that he has abused his discretion. A mistrial should be granted only when it appears that justice will be thwarted unless the jury is discharged and a new trial granted.[2]

The trial court did not abuse its discretion in refusing to grant a mistrial under the circumstances of this case.

However, the court in calculating the amount of the judgment, compounded the interest annually on the unpaid amounts due. This is not proper. Compound interest is not favored by the law.[3]

The plaintiff relies upon the case of *Jensen v. Lichtenstein*[4] as authority for permitting compound interest. That case is not in point. There the defendant promised to pay interest at specified times and this Court held that when the specified date arrived there was a new debt, to wit, the promised interest, in addition to the original debt. In the instant matter there was no promise to pay interest at a particular time.

The judgment is affirmed except as to the interest and as to that matter the case is remanded to the trial court with directions to recalculate the interest at simple interest rate.

---

**2.** *Curley v. Boston Herald-Traveler Corporation*, 314 Mass. 31, 49 N.E.2d 445 (1943).

**3.** *Goodwin v. Northwestern Mut. Life Ins. Co.*, 196 Wash. 391, 83 P.2d 231 (1938); *Musser v. Murphy*, 49 Idaho 141, 286 P. 618 (1930).

**4.** 45 Utah 320, 145 P. 1036 (1915).