FARNWORTH v. JENSEN et al.

No. 7378.   Decided April 25, 1950.   (217 P. 2d 571.)

See 47 C. J. S., Interest, sec. 35. Interest on property unlawfully detained, see note, 111 A. L. R. 1299. See, also, 53 Am. Jur. 898.

*Skeen, Thurman & Worsley,* Salt Lake City, for appellant.

*E. LeRoy Shields,* Salt Lake City, *Grover A. Giles,* Salt Lake City, for respondents.

LATIMER, Justice.

This action was brought by appellant to recover posses-sion of certain property located in Davis County, Utah, and to quiet title to the property on the alleged grounds that respondents had defaulted in the payment of $5,200, which they had agreed to pay under the terms of an exchange agreement signed by the parties on November 4, 1935. The respondents admitted owing certain payments but as an affirmative defense alleged default on the part of appellant in not timely clearing title to the property. As part of the relief demanded, respondents prayed that the trial court determine the amount due to appellants. The trial court decreed that the respondents should pay the bal-

ance owing on the purchase price of the property, with interest thereon from April 14, 1948, should pay certain accrued taxes, and upon tender of the sums found due, appellant should deliver to the respondents a deed to the property. Appellant appeals from the judgment, claiming principally that the court erred in denying interest on the deferred balance prior to April 14, 1948.

Prior to November 4, 1935, the appellant and her husband, James Farnworth, now deceased, were the owners of 263 acres of farm and pasture land located in Woods Cross, Davis County, Utah. At that time the respondents Chris Jensen and Alma Jensen, his wife, were the owners of two lots located in Salt Lake City, Utah. On that date the parties entered into an exchange agreement whereby the respondents agreed to convey to the Farnworths the two lots in Salt Lake City, subject to two mortgages, one for $950 and one for $3,000 and the Farnworths were to convey to the respondents the 263 acres located in Davis County. The exchange agreement contained a provision that the Farnworth property was to be conveyed to respondents clear and free of all encumbrances, excepting liens for drainage district bonds and general taxes. The respondents were to execute a mortgage to the Farnworths on the 263 acres for the sum of $5,000 out of which sum all liens and encumbrances were to be paid, excepting the general taxes for the year 1935. The mortgage was to secure a promissory note which carried the same terms and conditions as the exchange agreement. The $5,000 was to be paid to Farnworths as follows: $300 on the 10th day of November, 1936, and $500 on the 10th day of each November thereafter until fully paid. The contract and note both provided that the yearly payments were to include interest on the deferred balance at the rate of six per cent per annum. Additional terms of the agreement provided that in the event the Farnworths did not pay the drainage district levies or other liens and general taxes as set forth,

the respondents might pay the same and any such payments made would be credited on the amount unpaid.

On November 10, 1934, the respondents Swen C. Jensen and Chris Jensen, in keeping with the original agreement, signed a note and mortgage covering the 263 acres. However, the amount was $5,200, the extra $200 being included because the mortgages on the Salt Lake City lots amounted to more than the parties had anticipated. The note was executed some six days after the exchange contract and it provided for the payment of interest on deferred payments at the rate of six per cent per annum from date until paid. The amount and times of payment were prescribed as follows: $300 to be paid on or before December 10, 1936; $500 on or before the 10th day of December, 1937; and, $500 on or before the 10th day of each December thereafter until paid. While the dates of payments in the note vary from those prescribed in the exchange agreement, the variance is immaterial under the issues as framed and tried.

The deeds to the Davis County property and one of the Salt Lake City lots, together with the note and mortgage, were then placed in escrow. The escrow agreement provided that each party should take possession of the respective properties and hold and operate them as their own; that each party should have a reasonable time within which to clear up the title to the property each sold; that because the property of the Farnworths was impressed with a judgment lien and drainage district bonds, and because the Farnworths might be required to bring suit to clear title to the property, they would be granted time to perfect their title; that if a suit or suits were required, then the time allowed for Farnworths to clear title to the property would extend up to the time final judgments were entered; and, that the litigation could be carried to the Supreme Court if necessary to clear the title.

The first payment of $300 due in 1936 was made by the respondent, out of which the appellant and her husband

applied $164.43 to pay off the liens. The balance of $135.57 was kept by them and not applied to reduce the indebtedness existing against the property. When the 1937 payment became due, demand was made but respondents refused to pay, claiming that Farnworths had not paid the taxes as agreed and had not cleared the title to the property; and, in addition, that the respondents had discovered that there was a mortgage of $1,000 against the property which was not previously disclosed and that no part of the principal or interest on that mortgage had been paid.

On April 9, 1938, appellant and her husband filed an action against the respondents alleging in substance as follows: That the respondents had defaulted in their payment of the amount due on the contract and note; that they had paid only $300 due on November 10, 1936, and had failed and refused to pay the sum of $500 due November 10, 1937; that taxes levied and assessed from 1935 were unpaid; that on January 28, 1938, written notice was served on respondents that the exchange contract and escrow agreement had been terminated by appellants and that respondents must vacate the premises; and, that the respondents had refused and failed to comply with the notice to vacate.

While that action was pending, an affidavit of the appellant was filed stating that the respondents had neglected to take care of the wells and ditches on the property and requested the court to appoint a receiver to care for the property. An amended complaint was then filed which, in addition to the original allegations, included charges of committing waste and permitting the land to become waterlogged and damaged. The respondents, in answer to the allegations of that complaint, denied that the Farnworths were owners of the property and alleged that its value was approximately $17,000; that the Salt Lake City lots traded for it had an approximate value of $12,000; that at the time of the exchange the deeds were placed in escrow pending the clearing of title to the respective properties; that the Farnworths under the terms of the contract were re-

quired to pay off all liens against the property sold to respondents, and that these liens amounted to approximately $6,800; that the Farnworths had failed to pay such liens, which were approximately $1,800 in excess of the amount owed by the respondents, and that respondents had refused to make payment on the property because of the failure of Farnworth to clear title.

In that suit the court found that the liens upon the farm property which the Farnworths had agreed to assume totaled $6,124.24, exclusive of interest and costs, and that the Farnworths had defaulted under the terms of the escrow and exchange agreements in that they had failed to commence proceedings to clear the property of the liens within a reasonable time and were, therefore, not entitled to terminate the exchange agreement nor to recover possession of the property. Since both parties were in default the court dismissed the cause without prejudice to the rights of either party under the contract.

After termination of that litigation the appellant and her husband proceeded to clear title to the property and finally paid all liens, assessments and taxes existing against the property. After extended litigation this court on March 15, 1948, held the judgment lien to be valid and subsisting and it was subsequently satisfied by the appellant on April 14, 1948.

Thereafter, on October 5, 1948, the appellant filed this suit against the respondents alleging that she was the owner of the property and that prior to his death James Farnworth, by warranty deed, had transferred his interest in the property to appellant. She again alleged the terms of the 1935 exchange agreement and complained that the respondents were committing waste on the property; that they had wholly repudiated and abandoned the contract to purchase the property; that they had paid only $300 on the contract; and that they had failed to make any further payments as provided in the contract and had enjoyed the

use of the property over the period of years. She prayed that a receiver be appointed to take possession of the property; that the respondents be required to set forth their claims, if any, to said property; and that she be adjudged and decreed the owner. The respondents answered similarly to the answer in the former suit and as part of their answer denied that they had repudiated the contract. They affirmatively alleged that in 1936 the respondents had discovered that there were additional liens existing against the property and the amount due on the obligations exceeded the balance due on the contract; that they notified appellant they would withhold further payments on the contract until the liens were cleared; that after the judgment in the former case the appellant commenced to clear the liens from the premises and that all the liens were not cleared until the early part of 1948; that appellant had demanded approximately $13,000 from the respondents, which was $8,000 more than the amount due upon the contract; that the respondents had offered to pay $5,200 plus any sum due for taxes paid upon the property by the appellant after 1935; and that appellant had refused to accept any sum less than the $13,000. As part of their answer respondents tendered $5,200 plus the amount owing for taxes and prayed that the court order the appellant to accept the tender and execute and deliver to the respondents a good and sufficient deed to the premises.

The court found that prior to April 14, 1948, both parties were in default and decreed that respondent should not be charged with interest on the deferred balance until the appellant had succeeded in clearing off all the liens and encumbrances. As part of the judgment, the court prescribed that if the respondents deposited with the clerk of the court for the use of the appellant the sum of $5,200, with six per cent interest from April 14, 1948, to date of payment, together with the amounts paid for taxes by plaintiff with six per cent interest from the dates of payments, the appellant must execute and deliver to the clerk

of the court a warranty deed to the real estate conveying the same to the defendant. Otherwise, the court would enter a decree quieting title in appellant. Respondents complied with the order by paying the amount to the clerk and appellant appealed from the judgment.

The appellant cites five specific grounds of error, all of which are based upon the general proposition that the court erred in decreeing that the defendant need not pay interest on the deferred balance until April 14, 1948. She contends that the contract specifically provided for the payment of interest at the rate of six per cent per annum; that the respondents are required to pay the prescribed rate over the years; and that by the judgment entered the court made a new contract or modified the one that had been previously made by the parties.

A discussion of these contentions requires an examination of the nature of interest and a determination of whether the decree of the trial court can be sustained by the facts of this case.

15 Am. Jur., Section 159, page 577, contains the following explanation of the nature of interest:

"Generally speaking, interest is of two kinds: (1) That which is given by reason of a contract by the parties providing for the same, and (2) that which is given by way of damages."

30 Am. Jur., Section 2, page 6, defines interest as follows:

"* * * interest is the compensation allowed by law or fixed by the parties, for the use, detention, or forbearance of money, or its equivalent. It is the premium or recompense paid for money. Conventional interest in the ordinary acceptation of the term is such interest as the parties to a contract have agreed upon as part of their contract, and *is as much an integral part of the debt as the principal itself; and while it forms an element in computing the amount of recovery, it does so in the way that a provision of the contract limiting liability, or any other contractual provision as to the amount involved in the contract, does.* Interest by way of damages, or moratory interest, as it is sometimes called, is interest allowed in actions

for breach of contract or in actions for tort as damages, for the unlawful detention of money found to be due. It depends not upon any express contractual obligation to pay interest, but upon the theory that the party breaching the contract or committing the tort became bound at the time of the breach to make reparation; and for this delay in making such reparation, the injured party is entitled to such interest, as will recompense him therefor."

The Supreme Court of Pennsylvania, in the case of *Roos et al.* v. *Fairy Silk Mills*, 342 Pa. 81, 19 A. 2d 137, 138, 134 A. L. R. 844, tersely states the principle as follows:

"In *Watson* v. *McManus*, 223 Pa. 583, 72 A. 1066, 1067, dealing with the right to interest on a judgment, it was said that by Section 2 of the Act of 1700, 1 Sm.L. 7, 12 P. S. § 782, 'interest is a legal incident of every judgment. *Cochran* v. *Cummings*, 4 Dall. [250] 252, 1 L. Ed. 820; *Commonwealth, to Use of Bellas* v. [*Vanderslice et al., Adm'rs of*] *Miller*, 8 Serg. & R. 452. It is as distinctly a substantive part of the debt as if the obligation to pay it was founded on a contract for interest. "Where the terms of an obligation comprehend interest, it is inaccurate to say interest is added by way of damages; for it is a substantive part of the debt, as much as the principal is." ' "

If this interest were the type imposed as damages for breach of the contractual obligation, the default of the appellant in not clearing the title to the property within a reasonable time might have been such a default as would have excused the nonpayment of interest during the period that both parties were in default. However, the payment of interest during the interval between the contract date and the date of clearing title must be determined by arriving at the intent of the parties as they expressed it in the exchange agreement. If the parties intended to and contracted for the payment of interest during that period we are not concerned with the provisions applicable to interest recoverable by way of damages.

The provisions of the contract expressly provide for the payment of six per cent interest per annum on the unpaid balance from the date of the contract until paid. The respondents have consistently denied that they have repud-

iated the contract or their obligations thereunder and have repeatedly insisted that the contract was in full force and effect over the entire period. If such is the case, then respondents must carry out the terms imposed on them, whether they are beneficial or detrimental. They admit the retention and use of the money after the due dates of payments and yet seek to avoid the payment of interest on the amount retained because appellant was dilatory in clearing title.

Conceding that appellant was not permitted to forfeit the contract for failure of respondents to perform because she was in default, we are of the opinion that her default did not alter or change the obligations placed on respondent to pay interest on the unpaid balance. The interest contracted for is payable to appellant for respondents' use of the money. It must be paid at the agreed times unless there is some action on the part of appellant which legally excused respondents from performing in accordance with the provisions of the agreement. We are unable to discover evidence in the record which would permit a court to release the respondents from the terms of the contract made by them.

At the time the exchange agreement was signed, both parties knew and understood that there were encumbrances against appellant's property. The escrow agreement contains an acknowledgment of this and an anticipation by the parties that there was to be a lapse of time before title could be perfected. Knowing that the time element was uncertain and that litigation was contemplated which might necessitate an appeal to this court, respondents agreed to pay a definite sum each year with interest on the unpaid balance until the full amount had been paid. This would indicate an intent on the part of both appellant and respondent that the interest was to be paid in spite of the defects in the title and regardless of the time involved in clearing off the encumbrances.

The parties having intended to require the payment of interest, in order to be relieved from its payment on time, the debtor must be ready and willing to make payment, have an intention to do so, and he must be prevented from making the prescribed payment or payments by an act or omission on the part of the creditor or by operation of law. Here, there is no showing that the respondents were willing or intended to perform their obligations under the contract, or that appellant ever prevented respondents from either paying or tendering a payment. In 1938 the trial court set up the amounts of the encumbrances against the property. The exchange contract provided that the respondents could pay off any or all of these and such payments would be credited as payments on the agreement. Payments could have been made to reduce the existing liens, or, payments could have been tendered to appellant, paid into a depository under an escrow agreement, or paid into the court. Any of these acts would have placed the money available to appellant, subject to the conditions imposed by the contract regarding her obligations to remove the encumbrances from the property. Respondents under any one of these plans would not have had the use of the money over the years and it could have been invested for the benefit of appellant unless she in some way prevented its use for that purpose. Respondents chose to retain the money and in so doing are chargeable with paying the interest rate they agreed to pay.

Assuming that failure of the appellant to act promptly in removing the encumbrances was a breach of the agreement, it was not such a circumstance as would cancel respondent's obligation to perform if they intended to rely on the contract. Respondents were required to pay both principal and interest on agreed dates and they cannot lessen their burden by failing to tender payments on the due dates. Appellant's delict may have given respondents an opportunity to rescind the contract, but it did not create in respondents the right to choose the

benefits of a contract and reject the detriments. Having elected to rely on the contract respondents cannot have the use of the money and deny to appellant its earning power. Accordingly, the trial judge erred in not prescribing the payment of interest as provided in the contract.

This brings us to the method of computing the interest. The provision in the contract provided for the payment of interest at the rate of six per cent per annum and each yearly payment was to include the amount of this interest. Accordingly, there became due annually from the respondents the sum of $312 as interest.
We believe the rule announced in *Jensen* v. *Lichtenstein,* 45 Utah 320, 145 P. 1036, 1041, is controlling. In that case, Mr. Justice Frick speaking for the court disposed of the computation of interest in the following language:

"Defendants had promised to pay the interest quarterly. There thus fell due at the end of each quarter the sum of $175 as interest. This amount was owing from defendants to the plaintiff at the end of each quarter after the 6th day of December, 1910, when the last interest was paid as found by the court. If defendants had paid plaintiff the interest when due, he could have reloaned it to them, or could have loaned it to any one else, and could have contracted for any rate of interest not exceeding 12 per cent. per annum. In case, however, the loan had been made and no rate of interest was agreed upon, the statute would have supplied the omission by fixing 8 per cent. as the legal rate. *The plaintiff theretofore was as much entitled to interest upon the unpaid interest as though it had been paid to him when due and he had reloaned it,* and, in view that no rate was agreed upon, the legal rate of 8 per cent. applied. The *court therefore should have awarded plaintiff 8 per cent. interest per annum upon each quarterly installment of interest amounting to $175 from the time it became due until the principal and interest were merged into judgment,* to wit, to the 28th day of January, 1914. When therefore the several sums of $175, with interest thereon at the rate of 8 per cent. per annum from the date they severally became due until the judgment was entered as aforesaid, are all added to the principal, the total amount is the amount for which judgment should be entered. When that amount is ascertained, then the agreement in the note again controls which provides for interest at the rate of 7 per cent. per annum after judgment."

The judgment is reversed with directions for the trial court to proceed in accordance with the views expressed in this opinion. Costs to appellant.

PRATT, C. J., and WADE, J., concur.

McDONOUGH, J., not participating.

WOLFE, Justice.

I concur in the results. I think it sufficient to rest my concurrence upon the well-established rule of law that a purchaser who takes possession of land under a contract of purchase providing for the payment of interest on the unpaid balance of the purchase price, is liable for interest on that amount to the date of its payment even though payment is not made at the date or dates specified in the contract due to the default of the vendor. If the purchaser wishes to escape the payment of interest on the deferred payments during the time that the vendor is in default, he must tender the payments as they fall due and then set aside or appropriate the payments in such a manner and under such conditions as will exclude the vendee from any benefit or advantage which might accrue to him thereunder. See the annotation at 75 A. L. R. 316. It would be inequitable to allow the purchaser to enjoy the use of the land and at the same time allow him the use of the purchase money to the loss of the vendor. In the instant case, the respondents after 1936 did not make a tender of the payments as they fell due and thus they are liable for interest on those amounts during the period that the appellant was in default.