420 P.2d 47

Dudley M. AMOSS, Plaintiff
and Respondent,

v.

Heber BENNION, Jr., Vera W. Bennion, his
wife, and Bennion Ranching Company, a
corporation, Defendants and Appellants.

Nos. 10393, 10482.

Supreme Court of Utah.

Nov. 15, 1966.

———◆———

Milton A. Oman, Ernest F. Baldwin, Jr.,
Salt Lake City, for appellants.

Bryce E. Roe, Salt Lake City, for respondent.

HENRIOD, Chief Justice:

Appeal from a summary judgment for specific performance of an "Earnest Money" agreement having to do with the sale of land and livestock. Affirmed, with modification herein noted. No costs on appeal awarded.

The Bennions, with a fine reputation in the state, elderly people, homesteaded land in Daggett County, stocked and operated it for nigh onto half a century, listed part of it for sale with a Salt Lake realtor, who was represented by one Brown. Amoss, a nearby landowner, displayed an interest in purchasing it. Bennion suggested that Amoss buy all of the acreage. Amoss displayed an interest in this suggestion. Negotiations resulted with the normal David Harum offer and counteroffer as to how much, what was to be included, etc.

Finally, on August 14, 1965, the parties sat down at Mr. Bennion's ranch-house table and inked the agreement, subject of this controversy, in which, on a printed form, with fillable blanks, the parties apparently agreed that: Amoss would buy out all of Bennion's ranch properties, including "all range rights, water rights, mineral rights and all livestock and equipment," Amoss "to assume Federal Land Bank Loan, P. C. A.[1] livestock loan and R. Schofield Range Contract," Amoss to pay the realtor's commission.

Herein is the rub: Bennion conceded that Amoss could deduct the Federal Land Bank loan from the purchase price, but not the P. C. A. loan or the Schofield grazing contract. Amoss claimed otherwise and stood on his contract, as was. The $197,000 figure was arrived at when Bennion said he had about a $6,000 equity in the livestock over and above the $35,000 mortgage he had given to P. C. A. This equity was added to the $200,000 purchase price about which they had talked, making the price $206,000. Bennion then stated he wanted to retain the so-called Keel acreage of 40 or 60 acres. Nonetheless Amoss agreed to exclusion of this acreage for a $9,000 consideration, which, by addition and subtraction, all agreed to. This resulted in the $197,000 figure, which was the crystallized purchase price stated in the Earnest Money Agreement.[2] On the date of signing this agreement and before it was signed, Mr. Bennion, at Amoss' suggestion, called his attorney, Mr. Gibson, who was and had been his lawyer for 20 years. The terms were read to him, in response to which Mr. Gibson stated if they were agreeable to Mr. Bennion, he could sign the agreement, which he did, shortly after the phone call, and who, not long after the differences of

1. Utah Farm Production Credit Association.

2. Bunnell v. Bills, 13 Utah 2d 83, 368 P. 2d 597 (1962).

opinion arose after the signing, fired Mr. Gibson and hired present counsel.

Mr. Bennion signed not only as an individual but as President of the Bennion Ranching Corporation. Mr. Bennion later raised the question as to his authority to bind the corporation, that technically held title to the property—but the record pretty clearly reflects that the corporation was his alter ego, he having full control, with no one in a position to object to his transactions, nor to offend him. We think and hold that the record indicates a one-man operation and a ratification of his actions. Consequently the corporation defendant would have to respond as would he, to his commitments and of necessity equal obeisance to the trial court's judgment.[3]

After the post-agreement arose about who should pay the $35,000 mortgage to P. C. A., Amoss and Bennion mutually agreed that the purchase price be upped by $17,500, with which oral argeement Amoss should be bound. This should resolve Bennion's contention that the $35,000 should not be deducted from the $197,000 purchase price. It is significant that the $17,500 was exactly one-half the disputed $35,000 figure. It seems obvious that such compromise resolved not only differences as to the P. C. A. dispute, but also as to the assumption of the Schofield range privileges that had to do with rights in the *land* involved. As to who should get the stock in P. C. A., this was resolved in favor of Bennion, since Amoss conceded it was not included in his bargain.

So, we conclude that the purchase price ultimately agreed to by virtue of the written and conceded oral contracts was $197,000, plus $17,500, or $214,500; that Bennion is entitled to the Keel Acreage clear; to the life estate in his five-acre home tract, extending to and as a matter of right to both his and his wife's lives; that the proceedings anent injunctions are moot; that the dickering and bickering of the parties should not have occupied about 600 pages of transcript; that the matter of attorneys' fees should be determined between the parties and their respective counsel,—not the court, since both sides prevailed as to some of their contentions, according to our decision; that since Amoss agreed to buy the land and all the livestock, he was willing to take whatever land there was,—all of which easily was capable of ascertainment, that all of the livestock, whether 200 or 2000, and to pay off the mortgage thereon, without inventory was Amoss' concern; that the amount owing by Bennion to Schofield, assumed by Amoss, be deducted from the purchase price, since it was in the same area as the federal loan; that no damages be awarded in connection with the injunctive procedures.

.3. Peterson v. Holmgren Land & Livestock Co., 12 Utah 2d 125, 363 P.2d 786 (1961).

**254**

■ We think this conclusion is arrived at in a light more favorable to appellant, that the contention of violation of any fiduciary relationship is without merit, that the urgence of mutual mistake is not substantial, that there was some sort of connivance between principal and agent is not borne out by the record, and that the trial court did not err as a matter of law in doing what it did. With the interdictions mentioned in this remand, the trial court is affirmed, with instructions to enter judgment consonant with our conclusions.

McDONOUGH, CALLISTER, and TUCKETT, JJ., and JOSEPH E. NELSON, District Judge, concur.

CROCKETT, J., having disqualified himself, did not participate herein.