456 P.2d 172

Dudley M. AMOSS, Plaintiff and Respondent,

v.

Heber BENNION, Jr., Vera W. Bennion, his wife, and Bennion Ranching Company, a corporation, Defendants and Appellants.

No. 11398.

Supreme Court of Utah.

June 25, 1969.

Worsley, Snow & Christensen, Salt Lake City, for appellants.

Bryce E. Roe, of Roe, Jerman & Dart, Salt Lake City, for respondent.

COWLEY, District Judge.

This is a second appeal from a summary judgment for specific performance of a written contract for the sale and purchase of land and livestock in Daggett County, Utah, and Sweetwater County, Wyoming. For the first appeal see Amoss v. Bennion, 18 Utah 2d 251, 420 P.2d 47 (November 15, 1966).

On the prior appeal among other things this court held the contract to be enforceable, that the purchase price ultimately agreed to by virtue of the written and conceded oral contracts was $197,000, plus $17,500, or a total of $214,500, that Bennion was entitled to the Keel acreage clear, and the case was remanded to the District Court for the entry of an appropriate decree, Amoss v. Bennion, supra.

The question of 52 shares of water stock for the Keel Place was not raised and consequently not ruled upon in the first appeal, and is to be considered on this second appeal with other assignments of error.

This second and present appeal raises different issues than the first appeal and we shall limit our discussion to the issues raised on this second appeal.

The defendants-appellants base this second appeal on three assignments of error as follows: (1) That the lower court erred in ruling that defendants are not entitled to interest for the period prior to November 15, 1966; (2) the lower court erred in ruling that the down payment and installment payments under the contract should be deferred or postponed until November 7, 1968 (down payment) and July 15, 1969 (installment payments), both payments relate to the signing and filing of the final decree on August 12, 1968; and (3) the lower court erred in charging defendants with the current value of the water stock to be used on the reserved lands, Keel acreage.

Such facts as are material to the case on this appeal which are pertinent to the different issues raised will appear in the opinion.

Appellants' assignments of error I and II which challenge the rulings of the court as to (1) the date of commencement of interest and (2) the time for making the down payment and installment payments, will be discussed together, inasmuch as the two points are governed by similar principles of law.

The trial judge allowed interest from November 15, 1966, the date the first ap-

peal was decided and remanded to the lower court, to the present time. Bennion challenges this ruling and contends that plaintiff was granted full use, possession and enjoyment of the properties on the date of November 24, 1964 by an injunction which was issued by the lower court on said date, and therefore interest should have commenced at said time. The contract was entered into on August 12, 1964, and normally plaintiff would have gone into possession of the properties with interest commencing to run on October 1, 1964, but plaintiff had to resort to the court for an injunction. The facts will hereafter show, however, that plaintiff did not receive full possession of the properties by the injunction.

■ Defendants claim that the case at bar falls within the holding of the Utah Court in Farnworth v. Jensen, 117 Utah 494, 217 P.2d 571 (1950), wherein the court holds that plaintiff is subject to interest after he enjoys possession of the properties, even though there are encumbrances which the seller delays in removing and buyer does not choose to rescind. Plaintiff-respondent does not challenge the correctness of the holding of this court in Farnworth v. Jensen, supra. He acknowledges the general rule that when a purchaser takes possession of the property, and closing of the transaction is delayed by some defect in the title, or by existence of an encumbrance, interest begins to run at the time provided either expressly or impliedly by the contract. The rule recognizes that the vendor has substantially performed his agreement and that the purchaser can be compensated by an adjustment in the price, if necessary; or, if the purchaser is not willing to accept the defective title, he may rescind the contract, possession usually being inconsistent with the latter right.

The Farnworth case, supra, does not apply to the case at bar on the facts since in this case Bennion was not willing to perform the contract as vendor and was responsible for the delay. He interfered with the operations of the property, and plaintiff's possession of the properties was never complete prior to this court's decision on November 15, 1966, holding that the contract was valid and enforceable. Prior to this date the defendants were not willing to go through with the contract, even on the compromise basis.

After the disputes arose between the parties on various items pertaining to the transaction and plaintiff made a number of concessions including the Keel Place and the $17,500 increase in the purchase price, the plaintiff resorted to the court and was put in possession of the properties under a Preliminary Injunction on November 24, 1964, as mentioned above, but under such restrictions on the sale of cattle and operation of the ranch that the possession was not financially beneficial.

The record does not support the contention of defendants that the plaintiff had "full possession and use of the properties." The preliminary injunction issued by the court, November 24, 1964, did not give the plaintiff full possession and use, but only what could be considered a partial possession. The record further reveals that defendants were to blame in causing the delay and preventing a complete and beneficial possession in plaintiff.

■ At the time of entry of the decree, August 12, 1968, it was no longer possible to perform the contract in accordance with its terms, and it was the court's duty to make equitable adjustments with respect to interest and installments.

■ Plaintiff-respondent's authorities hereinafter cited make it clear that where a purchaser's possession is not beneficial, or is incomplete, or where the vendor has wilfully refused to perform his contract, a court of equity, in decreeing specific performance, should postpone the date for commencement of interest and the date upon which down payments and installment payments are to be made.

The courts have recognized, however, that adjustment should be made in the dates for commencement of interest and the due dates of installments if the purchaser has not taken beneficial possession of the properties, or if failure to complete the transaction has resulted from the vendor's wilful refusal to perform his obligation. In Atchison T. & S. F. R. Co. v. Chicago & W. I. R. Co., 162 Ill. 632, 44 N.E. 823, 35 L.R.A. 167 (1896), the purchaser was put in possession but the vendor insisted upon placing in the deed a condition not agreed upon. The delay in completing the sale was due solely to the wilful and excuseless conduct of the vendor, and the Illinois Supreme Court held that the vendor was not entitled to interest. The vendor wrongfully refused to perform its contract.

In Price v. Gmmel et al., 48 Colo. 163, 109 P. 941 (1910), the rule is applied that where a vendor refuses to comply with his contract to convey, and the vendee obtains a decree requiring specific performance of such contract, the purchase price draws interest only from the date the provisions of the decree are to be complied with by the vendee, and not from the date when the contract should have been performed, or from the date when, according to the contract, the payments were to be made or secured. It would be obviously unjust to allow the vendor interest on the deferred payments of the purchase price when the failure to perform the contract was caused by the fault of the vendor, and the vendee had never been in possession.

For other cases holding that where a vendor wilfully refuses to convey property to the purchaser, or is responsible for the period of delay in performing his contract,

interest does not run on the purchase price pending the outcome of a specific performance action, see Wilcox et ux. v. Commonwealth Realty & Trust Co., 248 Mich. 527, 227 N.W. 678, 75 A.L.R. 307 (1920); Consolidated Coal Company v. Findley, 128 Iowa 696, 105 N.W. 206 (1905); and recognized in Barnett v. Cloyd's Ex'r, 125 Va. 546, 100 S.E. 674 (1919). See also Chesapeake & Ohio Railway Company v. City of Dayton, 177 Ky. 502, 197 S.W. 969, 972 (1917), approving the same rule. For the application of the doctrine of "equitable compensation" see Caveny v. Asheim, 202 Or. 195, 274 P.2d 281 (1954); Flicker v. Chenitz, 55 N.J.Super. 273, 150 A.2d 688, 693 (1959); 49 Am.Jur., Specific Performance, Sec. 105; 5A Corbin on Contracts, Sec. 1160; and Johnson et al. v. Jones, 109 Utah 92, 164 P.2d 893 (1946).

■ For the most part, the trial court made a reasonable adjustment with respect to the rights of the parties in light of the delays that have occurred. The lower court is affirmed as to the commencement of the running of interest and time for the down payment and installments.

Defendants' third assignment of error involved on this appeal is that the lower court erred in charging defendants with the current value of the water stock in the sum of $4160, to be used on the reserved lands (Keel Place).

The water stock for the Keel Place became a disputed issue between Bennion and Amoss. Bennion maintained from the very beginning that he was entitled to 52 shares of water stock outright for the Keel acreage, whereas Amoss contended that Bennion was only entitled to a life-interest in said water stock and that the water stock would stay with the ranching properties and go to Mr. Amoss after the death of the Bennions.

The record clearly shows that, under the compromise agreement, the Bennions were entitled to the 52 shares of water stock outright for the Keel Place. Such a result is consistent with the testimony of Amoss, Gibson (former attorney of Bennion), and Bennion at the hearing on Preliminary Injunction. At the hearing on preliminary injunction on September 14, 1964, after Bennion said he wanted 52 shares, Amoss said, "All right, take 52 shares, and let's don't fight any more."

■ For the court to require the Bennions to pay the sum of $4160 as the current value of 52 shares of water stock was error.

■ We uphold the trial court's description of the Keel acreage in the final decree which embraces about 60 acres plus, about 40 acres of irrigated land and about 20 acres of rough land. The plaintiff contends that the Keel Place reservation was

originally 40 acres. However, the parties submitted to the trial judge the problem of describing the Keel Place and in doing so the lower court followed a natural course, the "top of the high rimrock ledge" and in doing so embraced the area south which consisted of the 40 acres of irrigated land plus some rough ground. This was the natural and reasonable description for the Keel Place, and we so find.

The plaintiff cross-appealed on the grounds that the Court erred in holding that the defendants had no obligation to convey to plaintiff any mineral rights other than those owned by the defendants as of August 12, 1964, on the properties herein required to be conveyed to plaintiff.

The date of August 12, 1964, is the date the parties entered into the agreement to sell and purchase the ranch properties.

Plaintiff contends that this provision is in contravention of the express terms of the contract, which require the defendants to convey all of the Bennion properties, "* * * together with all * * * mineral rights * * * and to furnish good and marketable title with abstract to date, * * * and to make final conveyance by warranty deed."

In the agreement of August 12, 1964, the only phrase is "mineral rights." No discussion was had between the parties as to an explanation of "mineral rights" or the extent of conveyance of said "mineral rights."

Plaintiff's counsel points out on page 221 of the record, paragraph 6, that defendants did not own mineral rights appurtenant to at least three parcels included in the Bennion ranches.

When the lower court required the defendants to convey only such "mineral rights" as they "owned" at the time the agreement was entered into, August 12, 1964, we believe this finding by the trial judge was a reasonable construction of the extent of the meaning of "mineral rights" in the contract inasmuch as Bennion could only convey such mineral rights as he "owned" on the date of sale, and we so hold and affirm the lower court on the cross-complaint.

In summary, this court affirms the lower court as to the time the down payment and installment payments are to be paid, the time the interest is to commence to run, the description of the "Keel Place" to be retained by the defendants, the cross-appeal holding the defendants are only obligated to convey the mineral rights owned by the defendants on August 12, 1964, when the contract was entered into, and awarding to the defendants the 52 shares of water stock outright for the use of the "Keel Place," but we reverse the lower court in charging the defendants for the current value of 52 shares of water stock in the sum of $4160 or any sum. This sum should be stricken from the findings and decree, and with this modification the de-

cree should be carried out by the parties as signed and entered. Each party is to pay its respective costs.

CALLISTER, TUCKETT, HENRIOD, and ELLETT, JJ., concur.

CROCKETT, C. J., having disqualified himself, does not participate herein.