· 500 P.2d 512

**Don Weiler BENNION, Executor of the Estate of Heber Bennion, Jr., et al., Plaintiffs and Respondents,**

**v.**

**Dudley M. AMOSS and Diana M. Amoss, his wife, Defendants and Appellants.**

**No. 12716.**

Supreme Court of Utah.

Aug. 14, 1972.

Henriod and Crockett, JJ., not participating.

D. M. Amoss, Salt Lake City, for defendants-appellants.

Arthur H. Nielsen and David S. Cook, of Nielsen, Conder, Hansen & Henriod, Salt Lake City, for plaintiffs-respondents.

CROFT, District Judge:

This is an appeal from a summary judgment entered in favor of plaintiffs and against the defendants. We affirm.

Plaintiffs filed this action seeking a judgment upon a promissory note in the sum of $123,028.33, together with interest, and to foreclose a mortgage upon real property located in Daggett County, Utah, given to secure the payment on that note. The defendants filed an answer and counterclaim, asserting, in addition to the usual general denial, three affirmative defenses which will be considered later in this decision.

The summary judgment appealed from was granted only with respect to the plaintiffs' complaint; and defendants' counterclaim, which was based upon allegations of wrongful, unlawful and malicious acts of plaintiffs in interfering with the business operations of the defendants, is still awaiting trial in the district court.

The plaintiffs' motion for summary judgment was supported by affidavits, exhibits attached thereto and requests for admissions served upon defendants to which they failed to deny or respond. Interrogatories served upon defendants were never answered, and an application for an order compelling answers to the interrogatories appears not to have been ruled upon by the court below.

Lawsuits between the parties on related matters have been before this court for review of prior occasions [1] and the appellants in the statement of facts set forth in their brief attempt to summarize the history of the stormy dealings between the parties and in doing so allege facts not contained in the record before us.

Rule 56 of the Utah Rules of Civil Procedure provides that a party may move with or without supporting affidavits for a

1. Amoss v. Bennion, 18 Utah 2d 251, 420 P.2d 47 (1966); Amoss v. Bennion, 23 Utah 2d 40, 456 P.2d 172 (1969).

summary judgment upon his claim or any part thereof, and further, that such summary judgment sought shall be rendered forthwith, if the pleadings, depositions, admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. The rule also states that supporting and opposing affidavits shall be based upon personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

Appellants contend that issues of fact remain to be tried, that summary judgment was therefore not justified and should not in any event have been granted prior to a trial of the counterclaim. In their answer appellants asked that foreclosure proceedings be stayed until all of the claims of appellants, including those in other lawsuits, be determined.[2]

The issues to be here decided are whether or not, based upon the record before us, the summary judgment appealed from was properly granted, and if so, whether execution on the judgment should be stayed

pending trial of the counterclaim and appellants' other cases. Giving due regard to the guidelines for summary judgment contained in Rule 56 as set forth supra, we believe the material facts established by the record may be summarized as follows:

The promissory note upon which this action is brought is dated May 15, 1968, is in the amount of $126,666.40 with interest at 5% per annum from July 1, 1968, with principal and interest to be amortized over 15 equal annual payments of $12,204.31, the first to be paid on or before July 15, 1969, and each subsequent payment to be made on or before the 15th day of May in each succeeding year. The note, signed only by Dudley M. Amoss, provided that it was to be secured by a mortgage on real property located in Daggett County, Utah, and by a second mortgage on real property located in Sweetwater County, Wyoming. A first mortgage in favor of the Federal Land Bank of Berkeley, California, existed upon at least a part of the mortgaged property.

The mortgage given to secure the note covering property in Daggett County, Utah, was executed by appellants on November 5, 1969. During the interval of time between the date of the note (May 15,

---

2. Appellants cite two other cases awaiting determination. One is Amoss v. Broadbent filed in the Third Judicial District Court in Salt Lake County under Case No. 159198, which case, although ready for trial in December 1965, was stricken from the trial calendar and never reset and is still pending. The second case is Fourth Judicial District Court in Daggett County, Case No. 132, entitled Amoss v. Bennion, which was tried in that court in May 1971. The latter case began in Salt Lake County as Case No. 189742 but was transferred to Daggett County on court order.

1968) and the date of the mortgage, an action (Case No. 153145) was tried in the Third Judicial District Court in Salt Lake County, Utah, and was appealed to and decided by this court on June 25, 1969.[3]

The note and mortgage were executed by appellants pursuant to and in compliance with a written stipulation of the parties dated November 24, 1967, and a judgment rendered on August 7, 1968, in Case No. 153145. Both the written stipulation and judgment set forth that the note and mortgage, to be given upon delivery of deeds to the property, were to be substantially in the forms of the exhibits attached to the stipulation and judgment. A comparison of the note and mortgage executed by appellants, and upon which summary judgment was granted, with the forms agreed upon in the stipulation and judgment in Case No. 153145 reveals that they are substantially identical. There was no requirement in the forms agreed to and ordered by the court in Case No. 153145 that the note and/or mortgage provide for a partial release clause or prepayment of the entire principal balance without penalty as claimed by appellants.

The judgment of August 7, 1968, in Case No. 153145 gave Amoss credit for the obligations assumed by him and owed to the Federal Land Bank of Berkeley, California, and to Rodney Schofield, and ordered Amoss to bring current all sums owed to such parties and to bring current all taxes and assessments related to the property which appellants had agreed to pay in the mortgage.

As of November 7, 1969, only one payment of $12,204.31 had been made by appellants and as of that date there remained an unpaid principal balance of $123,028.33. No payments upon the note were thereafter made by Amoss and as of the date of entry of the summary judgment appealed from, the 1970 and 1971 payments were delinquent. Amoss had not paid the 1970 property taxes nor the 1970 and 1971 payments due and owing on state leases assigned to him and which which Amoss had agreed to pay. Also, payments due on the first mortgage to the Federal Land Bank had become delinquent.

The judgment entered in Case No. 153145 specifically provided that certain matters were declared to be separable from the judgment therein entered, which matters were to be resolved either by agreement or separate actions. These matters were (1) appellants' claim for the value of hay from the Keel place and hay sold to J. R. Broadbent and (2) appellants' "claim for damages resulting from the matters other than those relating to 52 shares of water stock."[4]

3. Footnote 1—second case.

4. The controversy concerning the water stock was resolved by the decision of this

After the entry of the judgment in Case No. 153145 Dudley Amoss filed a new action in the District Court of Daggett County, Utah, against respondents in Case No. 132[5] and in his amended complaint therein he set forth 19 separate claims against respondents. His complaint therein alleged that claims 1, 2, 3, 4, 5, 6, 7, 9, 10 and 11 were brought in accordance with the stipulation and judgment in Case No. 153145 severing therefrom the matters (1) and (2) as set forth in the preceding paragraph. However, a review of each of the other claims set forth in Case No. 132 discloses that each relates to matters alleged to have occurred long before entry of the judgment in Case No. 153145 on August 7, 1968, except as to claims 14 and 18 which allege wrongful conversions of a 1964 wheat allotment of $1000 and a 1964 wool incentive payment of $1200, the dates of which alleged conversions are not stated.[6]

With these facts established in the record before us, we must now determine whether, based upon such facts, there is any genuine issue as to any material fact raised by the pleadings which would preclude the entry of the summary judgment from which this appeal is taken.[7]

■ By their answer appellants admit most of the allegations of the complaint, but deny there was due and owing the sum of $123,028.33, with interest, and deny they agreed to pay all prior liens, taxes, assessments, water or governmental charges imposed or becoming due on the mortgaged property, including the prior mortgage to the Federal Land Bank of Berkeley, the indebtedness to Rodney Schofield, or grazing fees on public leases. As noted in the summary of facts, the truth of these facts is established by the record and no genuine issue now exists as to any material allegations of the complaint.[8] The question remains as to whether or not a genuine issue as to any material fact is raised by any of the affirmative defenses asserted by appellants.

■ In one affirmative defense, appellants alleged the note and mortgage were entered into "pursuant to stipulation and several other matters in litigation" and were "improper, incorrect and invalid" because they did not provide for a partial release clause or prepayment of the entire principal balance without penalty as "stipulated between the parties." As the summary of facts set out, there were no such pro-

court in 23 Utah 2d 40, 456 P.2d 172, which related to an appeal from the judgment of August 7, 1968, in Case No. 153145.

5. See footnote 2.

6. The amounts claimed in Case No. 132 total $45,112, plus $100,000 for punitive damages.

7. Rule 56, Utah Rules of Civil Procedure.

8. The complaint alleges also that Amoss executed a Security Agreement on Goods covering farm machinery and equipment. The answer denies this allegation and from the Requests for Admissions it appears that such an agreement was not, in fact, executed.

visions required to be included in the note and mortgage under either the written stipulation of the parties or the judgment of the court in Case No. 153145, nor does the law require that either provision be included in a note or mortgage to render either valid. Thus, no genuine issue of material fact is raised by this affirmative defense.

■ The other two affirmative defenses are closely related and we consider them together. They in substance allege that respondents are "in pari delicto" because of their "own fraudulent, malicious acts and conduct" as more fully set forth in their counterclaim and in Case No. 132 presently being litigated in the District Court in Daggett County,[9] and that based upon their claims in such counterlcaim and case, appellants are entitled to a set-off to the claims sought by respondents in this action and to a stay of these foreclosure proceedings pending the outcome of such litigation.

Respondents' motion for summary judgment in the trial court specifically alleged that all matters raised by appellants in their affirmative defenses and their counterclaim had been litigated and determined in Case No. 132. Prior to filing this motion respondents had served requests for admissions and interrogatories upon appellants. The interrogatories asked appellants to state whether they contended they had any claim against respondents not adjudicated or determined in any prior litigation, and if so, to identify each such claim separately and in detail giving all relevant dates, circumstances and witnesses and to set forth why the same was not included in prior litigation. The interrogatories were never answered, nor was any denial ever made to the requests for admissions, although Dudley Amoss as a member of long standing in the Bar of this State, was certainly aware of the provisions of the Rules of Civil Procedure with respect thereto.[10] Also, no counteraffidavit was ever filed by Amoss with regard to the motion for summary judgment. Instead, Amoss states in his brief that he did not answer such interrogatories because the pendency of Case No. 132 "made the questions in the discovery meaningless at the time," and that the required answers could not in good faith be made until that case was disposed of. The logic of this response escapes us as the need for appellants to make clear on the motion for summary judgment that their counterclaim did in fact contain new

---

9. Appellants' brief states Case No. 132 was tried in May 1971, but a jury verdict was set aside on July 28, 1971, and a new trial was ordered. An interlocutory appeal was denied by this court on October 19, 1971.

10. Rule 36 provides that each matter of which an admission is requested is deemed admitted if not answered within the time required. Rule 37 covers the consequences of refusing to respond to interrogatories. Why the latter was not followed in this case is not apparent from the record.

**222**

claims not included in Case No. 132, seems clearly apparent.

■ Summary judgment on a complaint is not precluded by the existence of a counterclaim. Rule 56 permits partial adjudications of issues and claims. In an annotation found in 8 A.L.R.3d 1361, it is stated that as a general rule the presence of a counterclaim which is shown to be sham, frivolous, or without merit and interposed *for delay is not in itself a bar to* relief under summary judgment provisions, while the presence of a counterclaim predicated upon a good and substantial cause justifying a trial may bar summary judgment or may preclude the court from ordering execution of the judgment pending the determination of the counterclaim.

A good faith response to the aforementioned interrogatories would clearly have established whether the counterclaim was predicated upon good and substantial new causes or whether it involved only a restatement of old claims already litigated or still pending determination in Case No. 132. As heretofore noted, the note and mortgage were executed by appellants pursuant to their written stipulation and in partial settlement of their claims against respondents in Case No. 153145. That stipulation exempted from such settlement and reserved for future determination what therein was described as only "other" matters. Thereafter, Case No. 132 with its 19 claims was filed.

The note and mortgage contained no provision for deferring any payments due thereunder until these "other" matters were resolved. The first payment of $12,204.31 due on the note was paid. Annual payments in a similar amount were to extend into 1983 and any judgment obtained by appellants either in Case No. 132 or on new claims, if any, covered by the counterclaim could be used as an offset against such future payments.

The allegations of the counterclaim are asserted as a part of the affirmative defense. An examination of these allegations and a comparison therewith to the claims in Case No. 132 and the prior appeals before this court convinces us that they contain no new claim nor any excuse that would justify appellants' defaults upon the note and mortgage until the counterclaim or the "other" matters were finally litigated.

As to the allegations of the counterclaim, the record indicates that the alleged interference by respondents with appellants' operation of the mortgaged property is the "composite claim" upon which claim two in Case No. 132 is based. The allegation that respondents interfered with appellants' quiet enjoyment of their ranching operations by selling cows and calves to J. R. Broadbent is, in fact, the basis of another pending lawsuit, filed in or before 1965

and still lying idle in the court, in which Amoss did not choose to join the Bennions.[11] The allegation of the counterclaim that appellants were unlawfully dispossessed of the property on or about September 15, 1964, was the basis of the original lawsuit upon which this court rendered a decision in 1966.[12] The remaining allegations relating to a refusal to transfer stock certificates in Sheep Creek Irrigation Company, of flooding grazing lands between June and August of 1965, and of interfering with the water supply, appear to be the basis of the third, fifth and sixth claims in Case No. 132, and clearly part of the "other" matters mentioned in Case No. 153145.

Appellants' attempt to justify and excuse their defaults upon the note and mortgage until these "other" matters are litigated impress us as being entirely without merit and interposed only for delay. We find no genuine issue of any material fact exists under the affirmative defenses and the existence of the counterclaim would not preclude summary judgment or stay foreclosure under the authorities cited.[13]

The summary judgment is affirmed with costs to respondents.

CALLISTER, C. J., and TUCKETT, and ELLETT, JJ., concur.

HENRIOD, J., does not participate herein.

CROCKETT, J., having disqualified himself, does not participate herein.

11. See footnote 2.

12. See footnote 1—first case.

13. 8 A.L.R.3d 1361.