LHIW, INC., a Utah corporation,
Plaintiff and Appellant,

v.

John Z. DeLOREAN and Logan Manufacturing Company, a Delaware corporation, Defendants and Respondents.

No. 19906.

Supreme Court of Utah.

April 22, 1988.

David R. Daines, Christopher L. Daines, Logan, for plaintiff and appellant.

Robert S. Campbell, E. Barney Gesas, Salt Lake City, for defendants and respondents.

DURHAM, Justice:

Plaintiff LHIW, Inc., appeals the trial court's dismissal with prejudice of its claim for specific performance against defendants John Z. DeLorean and Logan Manufacturing Company. The trial court found that LHIW was unable to perform its duties under the contract between the parties. LHIW claims that the trial court erred in requiring it to perform prior to, or simultaneously with, DeLorean's performance. We affirm the trial court's order.

Logan Manufacturing Company (Logan) manufactures off-road vehicles intended primarily for winter use. John Z. DeLorean purchased Logan from Thiokol Corporation in 1978. LHIW is a corporation whose sole shareholder is Ralph K. Walker. LHIW sought to purchase Logan from DeLorean. Following a short period of negotiations, DeLorean agreed on June 7, 1983, to sell LHIW his ownership interest in Logan and the real property upon which Logan's premises were situated. The agreement was memorialized in a document entitled "Asset Acquisition Agreement," which contained some contractual provisions, but specified that the "terms and conditions" of the sale would be "set forth in an Agreement of Purchase and Sale to be developed and executed by the parties prior to closing." The terms and conditions were to follow the form of the 1978 agreement between Thiokol and DeLorean wherein DeLorean purchased Logan. The total purchase price under the agreement included $5,000,000 in cash and $5,000,000 loaned by DeLorean to LHIW and secured by Logan real estate, machinery, and equipment.

LHIW also agreed to satisfy DeLorean's obligation to Continental Illinois Bank, which had financed DeLorean's purchase of Logan, and to grant DeLorean an assignable option to acquire a 50 percent interest in LHIW upon approval by a majority of LHIW shareholders. The deal was set to close on June 30, 1983. The agreement was amended on June 10, 1983.[1]

The asset acquisition agreement was again amended on June 21, 1983. Most of the terms of payment were altered by the amendment, and significantly, LHIW agreed to provide DeLorean with a first trust deed on Logan's real property and a second secured position with respect to all remaining assets of Logan, subordinated solely to General Electric Credit Corporation (GECC), with which LHIW was attempting to arrange financing. Under this last amendment, the parties agreed to close the deal by July 6, 1983.

In conjunction with the final amended agreement, LHIW mailed a bulk sales notice to DeLorean's creditors, including the "Unsecured Creditor Committee of DeLorean Motor Company." This committee attempted to intervene in the sale. The bankruptcy court in Michigan that was handling the DeLorean Motor Company's bankruptcy proceedings refused to allow the committee to do so, but did permit it to attach the proceeds of the sale.

On June 30, 1983, LHIW's attorneys forwarded a copy of an intercreditor agreement between LHIW and GECC to DeLorean. After receiving this document on July 1, 1983, and others on July 5, 1983, DeLorean's attorneys wrote to LHIW stating their objections. Foremost among them was the failure of the intercreditor agreement to provide DeLorean with a secured first position on Logan's real estate and the absence of any security in Logan's remaining assets.

In light of the terms of the intercreditor agreement, DeLorean refused to participate in the closing as scheduled. He did, however, indicate a willingness to do so when the conditions of the amended asset acquisition agreement were fulfilled. Although there is some dispute between the parties, the transcripts of conversations between DeLorean and LHIW representatives, provided by LHIW, demonstrate that DeLorean at no time accepted the terms of the intercreditor agreement.

In spite of DeLorean's position on the intercreditor agreement, LHIW proceeded to meet with GECC representatives in San Francisco on July 6, 1983, to attempt to close the deal. DeLorean's representatives did not attend the meeting. After July 6, 1983, the deadline for closing specified in the amended asset acquisition agreement, LHIW considered DeLorean to be in breach of the contract. Thus, LHIW filed a complaint on July 29, 1983, seeking specific performance and damages for breach of contract.

In August of 1983, LHIW filed a motion for a temporary restraining order which provided for LHIW's immediate possession and control of Logan's premises and enjoined DeLorean from interference with LHIW's possession. Following these pleadings, the trial court issued two memorandum decisions. In the first, the court found substantial compliance by LHIW and granted specific performance and a preliminary injunction, provided that LHIW post a $10,000,000 security bond. It did not do so. One month later, the trial court issued a second memorandum decision which found that LHIW's bond was inadequate; however, the court granted a motion by LHIW for partial summary judgment. The motion was granted on the condition that LHIW make payment into court at a court-ordered closing on December 19, 1983, of $5,250,000 less $100,000 earnest money previously paid DeLorean and that LHIW make payment to Continental Illinois Bank as provided by the asset acquisition agreement. Once again, LHIW did not do so. Because LHIW failed to perform, the trial court dismissed with prejudice LHIW's claim for specific performance.

---

1. The amendment consisted of a provision increasing the amount of cash to be included in the purchase price by $500,000 if LHIW was unsuccessful in obtaining General Electric Credit Corporation's release of its claim on Logan's machinery and equipment.

In reviewing the proceedings below, we examine only the trial court's final order and memorandum decision. Although LHIW refers extensively to the trial court's earlier orders, they have no bearing on the issues on appeal. Following LHIW's failure to perform at the court-ordered closing on December 19, 1983, the trial court dismissed LHIW's claim and decreed that all of the court's previous orders were null and void. Thus, we review only the trial court's final determination that LHIW could not or would not perform its obligations under the asset acquisition agreement.

LHIW asserts that the trial court erred in not allowing LHIW to postpone its performance until DeLorean's appeal rights were exhausted or had expired. Nonetheless, LHIW still requested that the court convey title of Logan to LHIW before LHIW was required to perform.

■ LHIW asserts in its brief that "[i]n exchange for millions of dollars, LHIW was being asked by the judge to accept an imperfect title, clouded by the certain prospect of continued litigation" in the form of an appeal. This argument overlooks the general principle that one who accepts benefits under an order or judgment waives the right to appeal said order or judgment. *Cf. Hollingsworth v. Farmers Ins. Co.*, 655 P.2d 637, 639 (Utah 1982). LHIW was required to tender the purchase money under the court order. The only way DeLorean could preserve appeal rights would be to refuse the tender, under which circumstances the court could readily have protected the money from attachment by DeLorean's creditors until the appeal could be resolved. LHIW could not and cannot be excused from its obligation to tender the amount required under the contract it was seeking to enforce. We hold that there was no error and affirm the trial court's decision.

■ Specific performance is an equitable remedy, and accordingly, the trial court is granted wide discretion in applying and formulating it. *See, e.g., Morris v. Sykes*, 624 P.2d 681, 684 (Utah 1981); *Ferris v. Jennings*, 595 P.2d 857, 859 (Utah 1979). Further, a party seeking equity must do so with clean hands. Specific per-

formance will not be granted to a plaintiff who is unable or unwilling to perform. *See Fischer v. Johnson*, 525 P.2d 45, 46–47 (Utah 1974). Where tender into court is required as a prerequisite of specific performance, that tender, as with all tender, must be made without condition and must evidence a willingness and readiness to perform. *See Brooks v. Scoville*, 81 Utah 163, 172, 17 P.2d 218, 222 (1932); *see also Zion's Properties, Inc. v. Holt*, 538 P.2d 1319, 1322 (Utah 1975).

■ In the instant case, the trial court correctly applied the relevant legal principles. It ordered specific performance to take place on December 19, 1983, when LHIW was to be prepared to offer the necessary documentation and a $5,000,000 down payment. This order followed numerous hearings before the trial court, including a court-ordered closing conference, and gave LHIW ample opportunity to prepare its performance. LHIW's failure or inability to perform is thus sufficient justification to deny an equitable remedy.

LHIW relies primarily on three cases to support its position that the trial court should have waited to compel its performance until after DeLorean's right to appeal was extinguished or waived or had expired: *Amoss v. Bennion*, 23 Utah 2d 40, 456 P.2d 172 (1969); *Blomquist v. Bingham*, 652 P.2d 900 (Utah 1982); and *Eliason v. Watts*, 615 P.2d 427 (Utah 1980). In *Amoss v. Bennion*, the Court analyzed an installment contract which the defendant had refused to perform. The Court held that due to the defendant's interference with the property, the date of the plaintiff's possession was postponed, and therefore, the installment payments and the accrual of interest on the purchase price were also postponed. This was equitable because the defendant's acts had made it impossible for the plaintiff to perform on the contractually specified date. 23 Utah 2d at 43–45, 456 P.2d at 174–75. LHIW argues that its performance should similarly be postponed. This position is groundless. The trial court, after entertaining numerous motions and weighing the equities, granted specific performance and set December 19, 1983, as the date of conveyance. The delay in conveying title did not

affect LHIW's ability to perform, nor did it cause LHIW to begin making payments before it gained possession of Logan or increase the amount of interest or financing charges. Further, the court supervised the period between the contract's specified closing date and December 19, and that lapse in time did not, in any manner, adversely affect LHIW's interests.

LHIW also relies on *Blomquist v. Bingham*. *Blomquist* contains essentially the same issues and principles as *Amoss*. In fact, the Court in *Blomquist* found the rule of law enunciated in the *Amoss* opinion to be dispositive. 652 P.2d at 902. In a like manner, *Blomquist* is not applicable to this case. It stands only for the principle that a party will not be penalized by the terms of an agreement when the penalty is attributable to acts of the party who is breaching or unwilling to perform. As noted above, LHIW was not penalized by the delay.

Similarly, *Eliason v. Watts* is inapposite. In fact, the Court in *Eliason* pointed out that a plaintiff unable to possess property until a specific performance decree has been issued can be compensated by appropriately calculated damages. 615 P.2d at 430–31. Hence, any disadvantage inhering to LHIW from the delay between July (the expected closing date) and December (the court-ordered closing date) could have been recovered by an award of damages.

Although the trial court found the agreement between LHIW and DeLorean to be enforceable, LHIW's failure or inability to perform precludes it from obtaining specific performance.

We affirm the trial court's dismissal of LHIW's claim.

HALL, C.J., STEWART, Associate C.J., HOWE, J., and JACKSON, Court of Appeals Judge, concur.

ZIMMERMAN, J., having disqualified himself, does not participate herein; JACKSON, Court of Appeals Judge, sat.